## PENNSYLVANIA TURNPIKE COMMISSION, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (COLLINS), Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1998.

Decided April 6, 1998.

Neil T. Dombrowski, Philadelphia, for petitioner.

Christina J. Barbieri, Philadelphia, for respondent.

Before FRIEDMAN and KELLEY, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

The Pennsylvania Turnpike Commission (Employer) appeals from an order of the Workers' Compensation Appeal Board (WCAB) which affirmed the decision of a workers' compensation judge (WCJ) granting benefits to William Collins (Claimant) and directing Employer to pay certain of Claimant's medical expenses. We affirm.

Claimant worked as a toll collector for Employer. In February of 1993, Claimant filed a Claim Petition alleging that, on July 23, 1992, he suffered a compensable work-related injury to his right ribs and left shoulder when he slipped and fell on roadway grease.[1] Employer filed a timely answer denying all material allegations in the Claim Petition, and hearings were held before a WCJ.

At the hearings, Claimant testified on his own behalf, describing his work duties and the events of July 23, 1992. He testified that immediately following his fall at work, he was taken to the hospital by ambulance and, one day later, began treating with John Eshleman, D.O., who had treated Claimant for a prior work injury. (R.R. at 455a–60a, 464a–65a.) In December 1992, through Dr. Eshleman's referral, Claimant underwent an electromyographic (EMG) study with Jennifer Chu, M.D., and Claimant came under Dr. Chu's care in January of 1993. Claimant stated that, with Dr. Chu, he receives treatment consisting of intramuscular stimulation, a non-acupuncture technique involving the utilization of dry needles to elicit twitching in the muscles. (R.R. at 461a–62a.) Claimant also stated that, although Employer made work as a toll collector available to him in February of 1993, (WCJ's Findings of Fact, No. 13; R.R. at 125a), he was physically unable to return to such work until February 9, 1994. (R.R. at 550a–52a.)

---

1. On July 30, 1992, one week after the alleged work incident, Employer issued a Notice of Compensation Denial, citing the need for further investigation and review of medical information. Claimant then filed a Penalty Petition, seeking penalties against Employer because of Employer's failure to pay Claimant's medical bills. In response, Employer alleged that certain medical treatment performed on Claimant by Dr. Chu was unreasonable and unnecessary. (WCAB op. at 1–2, R.R. at 2a–3a.)

Claimant also presented the June 18, 1993 and February 4, 1994 deposition testimony of Dr. Chu,[2] who is Board-certified in electrodiagnostic medicine, pain management and physical medicine and rehabilitation. Dr. Chu testified that Claimant's EMG results indicated multiple nerve root damage concentrated on his left side, (Dep. 6/18/93 at 9–10, R.R. at 140a–41a), and Claimant's physical examination indicated a limited range of motion in Claimant's neck and left shoulder along with autonomic nerve instability. (Dep. 6/18/93 at 10, 27, R.R. at 141a–44a, 158a.) Based on the EMG, the examination results and Claimant's complaints of pain when he came to Dr. Chu for treatment in January of 1993, Dr. Chu began to treat Claimant using intramuscular stimulation, or dry needling, to help relieve Claimant's neck and shoulder pain. (Dep. 6/18/93 at 15–17, R.R. at 146a–48a, 154a–57a.) In her testimony, Dr. Chu described this technique at length and stated that it constituted reasonable and necessary treatment because, unlike the more conventional therapy that had been administered to Claimant, this course of care had improved Claimant's physical abilities and reduced his level of pain, resulting in significant overall improvement. (Dep. 6/18/93 at 17–23, 37, R.R. at 148a–54a, 168a; Dep. 2/4/94 at 5, 38, R.R. at 323a, 356a.) Dr. Chu denied that dry needling is an experimental treatment, (Dep. 2/4/94 at 39, 61 R.R. at 357a, 379a), and she provided an article detailing a study on the technique. (R.R. at 404a–26a.) Finally, Dr. Chu indicated that Claimant's condition resulted from his fall on July 23, 1992, (Dep. 6/18/93 at 29, R.R. at 160a), and that the condition precluded his return to work at that time. (Dep. 6/18/93 at 32–35, R.R. at 163a–66a.) (*See also* WCJ's Findings of Fact, No. 7.)

In opposition to Claimant's medical evidence, Employer presented the depositions of Leonard Klinghoffer, M.D., and Daniel Skubrick, M.D.. Drs. Klinghoffer and Skubrick both performed their own physical examination of Claimant and, based upon the examination, deemed that Dr. Chu's treatment of Claimant was neither reasonable, necessary nor related to Claimant's diagnosis and symptomatology. (*See* WCJ's Findings of Fact, Nos. 9–11.)

At the May 20, 1994 hearing before the WCJ, Employer requested peer review (PR) with respect to the reasonableness and necessity of Dr. Chu's procedure pursuant to section 420(a) of the Pennsylvania Workers' Compensation Act (Act),[3] 77 P.S. § 831, part of the statutory provisions added to the Act by the Act of July 2, 1993, P.L. 190, commonly known as "Act 44." However, although tempted to grant Employer's request, the WCJ ultimately found that such action was unnecessary; the WCJ concluded that, because he had sufficient information on the matter from both parties' medical experts, he could render a decision on the issue without resort to PR.

After considering the evidence adduced at the hearings, the WCJ determined that Claimant's testimony regarding the events of July 23, 1992 and his inability to return to work before February 9, 1994 was persuasive. (WCJ's Findings of Fact, No. 16.) In addition, the WCJ accepted the testimony of Drs. Eshleman and Chu as more persuasive than the testimony of Drs. Skubrick and

---

2. In addition, Claimant presented the deposition of Dr. Eshleman who testified to a final diagnosis of chronic myofascitis of the left shoulder musculature causally related to Claimant's work injury. Dr. Eshelman concluded that the continuing severity of the problem precluded Claimant's return to his prior work duties. (WCJ's Findings of Fact, No. 6.)

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626. Under the 1993 amendments to the Act, added by the Act of July 2, 1993, P.L. 190, commonly known as "Act 44," section 420(a) provides in pertinent part that: the board, the department or a [WCJ], if it or he deem it necessary, may, of its or his own motion, either before, during, or after any hearing, make or cause to be made an investigation of the facts set forth in the petition or answer or facts pertinent in any injury under this act .... The [WCJ] when necessary or appropriate or upon request of a party in order to rule on requests for review filed under section 306(f.1), or under other provisions of this act, may ask for an opinion from peer review about the necessity or frequency of treatment under section 306(f.1). The peer review report...shall be filed with the...[WCJ]...and shall be a part of the record .... The [WCJ] shall consider the report as evidence but shall not be bound by such report.

Klinghoffer with regard to the nature and extent of Claimant's work injury. (WCJ's Findings of Fact, No. 17.) The WCJ then went on to find that the intramuscular stimulation administered by Dr. Chu was reasonable, related and necessary medical treatment. (WCJ's Findings of Fact, No. 18.) Based on these findings, the WCJ granted Claimant's Claim Petition, awarding Claimant total disability benefits from July 24, 1992 through February 8, 1994 and partial disability benefits thereafter to reflect Claimant's return to work on February 9, 1994 with residual medical impairment. In addition, the WCJ awarded medical expenses covering Dr. Chu's treatment.[4] (*See* R.R. at 23a.)

Employer appealed to the WCAB arguing that the WCJ erred in refusing to submit the question of the reasonableness and necessity of Dr. Chu's treatment to peer review pursuant to *section 420 of the Act* and, further, that the record did not contain substantial evidence to support the WCJ's finding that the treatment provided by Dr. Chu was reasonable and necessary.[5] The WCAB disagreed with both of Employer's arguments[6] and, accordingly, affirmed the WCJ.

On appeal to this court,[7] Employer first argues that the WCJ lacked jurisdiction, in the context of Claimant's Claim Petition proceeding, to make findings with regard to the reasonableness and necessity of Dr. Chu's

medical treatment of Claimant and to decide whether that treatment was, in fact, reasonable and necessary. Employer contends that, as of the enactment of Act 44, Act 44's statutory cost containment provisions provide the exclusive method for determining questions with respect to the reasonableness and necessity of medical treatment, either through the utilization review process (UR) found in section 306(f.1)(6) of the Act, 77 P.S. § 531(6), or through PR under section 420 of the Act. Employer points out that, here, the WCJ received, but denied, a request for PR under section 420(a) of the Act. According to Employer, once the WCJ declined to ask for PR, the WCJ was required to have the dispute as to the reasonableness and necessity of Claimant's medical treatment resolved in accordance with the UR procedures found under section 306(f.1) of Act 44. Employer bases this argument on the language found in section 306(f.1)(6) of Act 44, which provides in pertinent part:

> *Except in those cases in which a [WCJ] asks for an opinion from [PR] under section 420,* disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:
>
> (i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective

4. Payment was disallowed for the majority of Dr. Eshleman's medical treatment. (R.R. at 21a–22a.)

5. Employer also argued that the WCJ miscalculated Claimant's average weekly wage. The WCAB determined that the WCJ did, in fact, err in determining Claimant's average weekly wage and, thus, modified the WCJ's order accordingly. This matter is not before us on appeal.

6. With regard to Employer's argument that the WCJ should have submitted the question of Dr. Chu's treatment to PR, the WCAB noted that the WCJ's authority to appoint an impartial medical witness under section 420 of the Act is discretionary and that the WCJ's failure to exercise this discretion does not constitute reversible error where, as here, the WCJ chooses to base his decision on the testimony of one of the parties' medical experts. *Wingert v. Workmen's Compensation Appeal Board (Getty Refining & Marketing Co.)*, 78 Pa.Cmwlth. 640, 468 A.2d 526 (1983);

*Lamanna v. Workmen's Compensation Appeal Board*, 62 Pa.Cmwlth. 535, 437 A.2d 465 (1981). The WCAB also concluded that the 1993 amendments to the Act did nothing to change this; that is, Act 44 did not require the WCJ to appoint an impartial examiner, nor did it require the WCJ to order peer review when deciding a claim petition. Finally, the WCAB determined that the record supported the WCJ's finding that Dr. Chu's treatment was reasonable and necessary, citing the testimony of Dr. Chu, which the WCJ found more credible and persuasive than the testimony of Employer's medical experts.

7. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Martinez v. Workmen's Compensation Appeal Board (Container Corp. of America)*, 676 A.2d 751 (Pa.Cmwlth. 1996).

[UR] at the request of an employe, employer or insurer. The department shall authorize utilization review organizations [UROs] to perform [UR] under this act. . . . Organizations not authorized by the department may not engage in such [UR].

77 P.S. § 531(6)(i) (emphasis added) (footnote omitted).

Relying on *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314 (Pa.Cmwlth.), *appeal denied*, 546 Pa. 657, 684 A.2d 558 (1996), Employer maintains that there is a distinct difference between issues of causation and issues of reasonable and necessary treatment. In *Bloom*, we stated that an action challenging causation cannot be raised before a URO but must be raised in a petition intended to be heard by a WCJ. Likewise, a dispute regarding the reasonableness and necessity of medical treatment cannot be decided by a WCJ but must be raised in a request for UR and submitted to a URO.[8] Thus, Employer maintains that, during a claim petition proceeding, a WCJ can only determine causation, and he is precluded from deciding the reasonableness or necessity of medical treatment at such time because, except in cases where the matter is given over to PR, any dispute on that issue must be raised in a request for UR with review by a URO. *See* 77 P.S. § 531(6)(i). To hold otherwise, argues Employer, would make subsequent UR meaningless because Claimant would undoubtedly argue that the WCJ's prior finding with respect to reasonableness and necessity would preclude consideration of those issues by a URO.[9] Thus, Employer maintains that the WCJ has effectively denied Employer both PR and UR, thereby forcing Employer to pay for medical treatment without the benefit of the cost containment measures now required by Act 44.

■ In its first argument, Employer has posed an intriguing and important issue of first impression to this court; unfortunately, however, Employer has waived its right to raise that issue here by failing to first raise it before the WCAB.[10] Pa. R.A.P. 1551(a). (*See*

---

**8.** Although *Bloom* deals with a termination petition and a petition to review medical treatment, Employer contends that the reasoning in *Bloom* also applies in the context of a claim petition. However, we point out that, unlike the situation here, in *Bloom*, the work-relatedness of the underlying injury had already been established so that the employer was free to, and did, request UR. In *Bloom*, we noted that the employer's petition to review medical treatment questioned the causal relationship between the claimant's medical treatment and his work-related injury, raising this challenge before the WCJ. We distinguished this petition from the employer's request for UR, which was a challenge to the reasonableness and necessity of the claimant's medical treatment filed for URO consideration. Because the employer raised two different issues *in two different forums*, we held that the matters need not be consolidated. In contrast, Employer here has filed a Claim Petition before the WCJ, challenging the work-relatedness of Claimant's underlying injury itself and, *in the same proceeding*, Employer asks the WCJ to consider the reasonableness and necessity of Claimant's medical treatment for any injury determined to be work-related.

**9.** This does not appear to be an idle threat. Already, one commentator has suggested that a claimant's counsel should make use of this apparent loophole in the new amendments to the Act to avoid having an employer benefit by UR after a claim petition decision. Submitting that a finding by a WCJ on an original claim should supersede any administrative undertaking with regard to the reasonableness and necessity of treatment, the commentator suggests that a claimant's counsel should always present expert testimony on this matter and specifically request that the WCJ make findings on this issue during the contest of liability for the underlying claim. *See* David B. Torrey & Andrew E. Greenberg, Pennsylvania Workers' Compensation: Law and Practice § 14:97 (1997); *see also C.D.G. v. Workers' Compensation Appeal Board (McAllister)*, 702 A.2d 873 (Pa.Cmwlth.1997); *Bloom*.

**10.** Indeed, Employer could have raised this issue before the WCJ when, after the WCJ declined to grant Employer's request for PR, the WCJ then proceeded to make his own determination regarding the reasonableness and necessity of Dr. Chu's treatment. However, Employer voiced no objection.

A review of the record indicates that Employer had ample opportunity to raise its contention that, absent PR, a WCJ has no authority to determine the reasonableness and necessity of medical treatment in the context of a claim petition. We point out that it was Employer itself that raised the question of the reasonableness and necessity of medical treatment in the Claim Petition proceeding by requesting PR under section 420 of the Act. After Employer raised the matter, the parties and the WCJ engaged in a lengthy discussion of the PR process, but Employer never questioned the WCJ's ability to determine rea-

O.R., Employer's appeal from the WCJ's Findings of Fact and Conclusions of Law.) Thus, consideration of this issue must wait for another day.

Employer also argues that, even if the WCJ had authority to decide the reasonableness and necessity of medical treatment in the context of a claim proceeding, the WCJ here erred in concluding that Dr. Chu's medical treatment of Claimant was reasonable and necessary. However, in making this argument, Employer merely asserts that Dr. Chu's treatment is not consistent with the opinion of Dr. Skubrick, who testified that such treatment was inappropriate for Claimant's diagnosis. As stated, the WCJ rejected Dr. Skubrick's testimony, and the WCJ found Dr. Chu's treatment to be reasonable and necessary based on the credible testimony of Dr. Chu, which amply supports the WCJ's finding. The WCJ, as ultimate factfinder, has exclusive authority to deter-mine the credibility of witnesses and to resolve conflicts in testimony. *Vazquez v.Workmen's Compensation Appeal Board (Masonite Corp.),* 687 A.2d 66 (Pa.Cmwlth. 1996). Where, as here, that testimony provides substantial support for the WCJ's finding, we may not alter that finding on appeal.

Accordingly, we affirm.

### ORDER

AND NOW, this 6th day of April, 1998, the order of the Workers' Compensation Appeal Board, dated February 28, 1997, is hereby affirmed.

sonableness and necessity of medical treatment in the event he opted not to grant Employer's PR request. (*See* R.R. at 506a–22a, 582a.) When the WCJ actually refused the request for PR, Employer was presented with another opportunity to object to the WCJ's authority to proceed further on this issue; instead, the following exchange took place.

> WCJ: With regard to the Employer's request for peer review, as indicated off the record, I do not feel in this case that peer review is necessary. I do, however, feel that if the Employer wishes to put his own evidence in regarding the reasonableness and medical necessity of the treatment offered by Dr. Chu, I will give them an opportunity to do so, but close the record on the underlying issue. Now, counsel, you can state your reasons why you think peer review at this point should be done at the Bureau's expense, if you so choose.
>
> Employer's counsel: Your Honor, we had requested that at the last hearing. It was my understanding that you were inclined at that time to grant that, and we have to rely upon the transcript in that respect. You're now inclined not to allow that. We'll allow the record to close and we'll stand on that evidence that we have in the record indicating that Dr. Chu's treatment is unreasonable.
>
> WCJ: You want to close the record for all issues?
>
> Employer's counsel: That's fine. If you're ruling against us with respect to our request for Section 420, then we would agree to close the record.

(O.R., Hearing of November 7, 1994 at 6–7.)