**CHIK–FIL–A, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MOL-LICK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 30, 2001.
Decided Feb. 25, 2002.
As Amended March 20, 2002.

**681**

Michael A. Cohen, Pittsburgh, for petitioner.

Scott A. Fatur, Greensburg, for respondent.

Before DOYLE, Senior Judge,[1] SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

DOYLE, Senior Judge.

Chik–Fil–A (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a Workers' Compensation Judge (WCJ) that had granted the claim petition filed on behalf of Margaret Mollick (Claimant).

The issues on appeal are (1) whether a WCJ lacks jurisdiction, within the framework of a claim petition proceeding under the Workers' Compensation Act (Act),[2] to determine the reasonableness and necessity of Claimant's medical treatment **where no utilization review request has been filed;** (2) whether the absence of a complete medical history renders the testimony of Claimant's medical expert incompetent; and (3) whether substantial evidence supported an award of **total** disability benefits where claimant was cleared by her physician to work part–time.

Claimant worked for Employer as a food preparer and Senior Team Supervisor at Employer's Greengate and Westmoreland Mall locations for seven years until she sustained a low back injury on January 30, 1997, while lifting a tub of cabbage preparatory to making coleslaw. At the time of her injury, Claimant was employed as a permanent part-time (less than 40 hours per week) employee and had an average weekly wage of $213.47. She filed a claim petition on March 13, 1997, alleging total disability from the date of the injury. Employer filed an answer on May 2, 1997, denying all material allegations, and hearings were held before a WCJ from May 16, 1997 through May 18, 1998.

Claimant testified on her own behalf and stated that she experienced a sharp pain across her low back when she lifted a tub of cabbage and could not move. She confirmed that the tub of cabbage weighed approximately fifteen pounds, and further stated that she had never experienced back pain of this sort before. She indicated that she notified her manager and waited until her husband came to pick her up, whereupon she sought treatment with a chiropractor at Jeannette Chiropractic, by whom she had never before been treated, because she could be seen right away, as well as with her family physician, Jill Constantine, M.D. Unhappy with the treatment provided by Jeannette Chiropractic, she sought treatment from Kenneth A. Iles, D.C., of Pedrow's Chiropractic the following day, and continued to treat with Dr. Iles for the duration of the claim period.[3]

Claimant also testified that she had suffered a previous back injury from a fall at work sometime around 1995, and that she had been seen by a different chiropractor for back pain several months before the current injury. She testified that she attempted to return to work with Employer for a two-hour shift after the January 30,

---

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1; 2501–2626.

3. Employer established that Claimant has seen Dr. Iles upwards of ninety times prior to the hearings in this matter.

1997 accident, after being released to light-duty, but experienced pain and spasms in her back. She did not return to her scheduled shifts and has not worked since that time, believing that there is no work that Employer can offer her that she can do. She conceded, however, that she did not inform Employer that her back hurt or ask for any modification in her duties.

At a subsequent hearing on May 18, 1998, Employer established, through cross-examination, that Claimant had actually been treating with other chiropractors for back and neck problems since 1987. Claimant admitted to seeing a Dr. Dent some fourteen times during the period from October 23, 1987 through September 29, 1993, although she professed an inability to remember any of the details of those visits. Claimant also indicated that she had seen a Dr. Kevin Griven[4] previous to the January 30, 1997 incident and had been seeing a Dr. Grennan since August of 1997.[5]

Claimant also offered the deposition testimony of Dr. Iles, who began treating Claimant on February 1, 1997. He testified that he saw Claimant daily for the first week, that she then went on vacation for two weeks, and that he saw her three times a week after that. Dr. Iles arrived at a diagnosis of "lumbar dis[c] disorder, with myelopathy, myospasm and sciatica" (Notes of Testimony, N.T., Deposition of Kenneth A. Iles, D.C., dated August 5, 1997, p. 7), which was related to Claimant's work injury, although tests performed by Dr. Iles showed degenerative disc disease and osteoarthritic changes not caused by the work injury.

Dr. Iles testified that Claimant "plateaued" at the end of March or early April of 1997, and that he then released her to light-duty work. He opined that Claimant could perform work where she could sit or stand, get up and move around, and that required no lifting, reaching or bending. Dr. Iles testified that in "[l]ate May, early June ... her subjective complaints started to reflect more constant pain, or more severe constant pain." (N.T., Dr. Iles' Deposition, p. 20.) He considered her prognosis poor, although he could not explain this deviation from his original prognosis of "near complete recovery in approximately three to four months." (N.T., Dr. Iles' Deposition, p. 13.) On cross-examination, the doctor conceded that the work restrictions that he had placed on Claimant were based solely on her subjective complaints and that, based on his own findings, these additional restrictions would not have been necessary. The doctor further conceded that he found no disc herniation on any level and that there was no indication of impingement on any nerve roots. Finally, the following exchange between Dr. Iles and Employer's counsel took place:

Q. You are assuming in giving [your] opinion ... that the history she gave you is complete, and accurate regarding the incident itself of January 30, 1997, the onset of complaints following that incident, and any complaints she had of a similar nature if any, before that injury, is that correct?

A. Correct.

Q. If that history is not complete and accurate your opinion would not be valid and you would have to reevaluate it?

A. That's correct.

(N.T., Dr. Iles' Deposition, pp. 23–24.) The doctor then indicated that Claimant

4. This doctor's name is also given as "Gribben" in some parts of the transcripts.

5. The full names and educational training of these doctors are not set forth in the record.

had included her fall on the ice around 1995 and her fall from a ladder around the same time [6] in her patient history, but that he had not reviewed any of her previous treatment records.

Employer presented the testimony of Mr. Charles Clark, the owner/operator of the Chik–Fil–A restaurant that had employed Claimant. He indicated that he had offered Claimant a counter job based on the work restrictions imposed by her chiropractor, initially at two hours per day, at her former rate of pay. He testified that he was willing to provide any accommodation required by Claimant to permit her to ease back into employment and to allow her to work up to whatever level was comfortable for her.

Employer also presented the deposition testimony of Jack Smith, M.D., who examined Claimant on June 9, 1997, at Employer's request. He testified that Claimant's history to him was "that all of her treatment chiropractically began after her 1994 or 1995 [work-related fall from a ladder]." (N.T., Deposition of Jack D. Smith, M.D., dated March 30, 1998, p. 10.) However, he was subsequently able to review the chiropractic records of Dr. Dent, who treated Claimant for back and neck pain from 1987 through 1993, and Dr. Griven, who began treating Claimant for back pain in 1994. It was Dr. Smith's opinion that Claimant "had sustained a lumbosacral strain . . . that was superimposed on degenerative arthritis and degenerative disc disease. . . ." (Finding of Fact No. 9.) He also opined that Claimant had returned to baseline by the time of his evaluation and that he could not attribute Claimant's difficulties to her January 30, 1997 work injury.

The WCJ credited Claimant's testimony and that of Dr. Iles and made the following findings of fact:

6. Claimant fell on the ice while delivering papers for a separate, but concurrent employ-

12. This Workers' Compensation Judge finds the testimony of Dr. Iles, employee's treating chiropractor, credible and persuasive that the employee sustained a work-related injury on January 30, 1997 resulting in subsequent disability. This Workers' Compensation Judge finds that the employee's underlying arthritic condition was **aggravated** by the January 30, 1997 work-related injury. Dr. Iles' opinions are **based on a history from the employee that she suffered a work-related injury on January 30, 1997,** which this Workers' Compensation Judge found to be credible and persuasive.

13. This Workers' Compensation Judge finds the opinions of Dr. Smith lacking in credibility and persuasiveness where it differs from Dr. Iles RE: causation and disability.

. . . .

16. This Workers' Compensation Judge finds that the employee again became temporarily totally disabled beginning on January 6, 1998 after her attempted return to work at light duty.

17. The employee is entitled to temporary total disability benefits at the rate of $192.13 per week from January 6, 1998 to the present time and continuing into the future.

18. **The employee has incurred the following *reasonable and necessary* medial [sic] expenses as a result of her work-related injury:**

| | |
|---|---|
| The PT Group | $ 75.00 |
| Greensburg X-ray Associates 03–26–97 | $ 125.00 |

er, and fell from a ladder while employed by her current employer.

| | |
|---|---|
| Westmoreland Hospital 03–26–97 | $ 1,594.50 |
| Westmoreland Hospital 01–22–98 | $ 222.85 |
| Westmoreland Hospital 02–25–98—03–12–98 | $ 737.00 |
| Allegheny General Hospital 08–15–97—03–16–98 | $ 6,049.00 |
| Pedrow 02–07–97—08–13–97 | $15,883.30 |
| Allegheny Anesthesiology 08–15–97—03–16–98 | $ 5,570.00 |

(WCJ Decision dated February 17, 1999, pp. 8–9.) (Emphasis added.) In addition, the WCJ rendered the following conclusions of law:

2. The employee has sustained her burden of proof that she suffered a work-related injury on January 30, 1997, that the injury arose in the course of employment and that the injury was causally related to her employment, resulting in temporary total disability for the period of time from January 31, 1997 through January 5, 1998 and again from January 6, 1998 to the present time and continuing into the future.

. . . .

6. The defendant/employer and/or its insurance carrier are liable for the medical expenses the employee has incurred as a result of her work-related injury as enumerated in the respective Finding of Fact, pursuant to Section 306(f)(1) of the Act, as amended.

7. Section 306(f.1)(3)(i) of the. . . . Act, as amended, generally caps medical fees at one hundred thirteen (113) percent of the Medicare reimbursement. The appropriate reimbursement should be either one hundred thirteen (113) percent of the Medicare reimbursement rate or the actual charge, whichever is less.

(*Id.* at pp. 9–10.) Thus, the WCJ granted Claimant's claim petition, awarding total disability benefits, counsel fees, and interest on all past due compensation owed to Claimant, and directed Employer to pay all reasonable and necessary medical expenses. **At no time prior to February 17, 1999 (the date of the WCJ's decision and order), did the Employer, or anyone else, request a utilization review under the provisions of Section 306(f.1)(6) of the Act.[7]**

■ Employer appealed to the Board. The Board affirmed, finding that there was substantial credible evidence in the record to support the WCJ's determination that Claimant had sustained a work-related aggravation of her underlying arthritic condition on January 30, 1997. The Board concluded that Employer's objections to Dr. Iles' expert testimony, based on Claimant's incomplete medical history and his failure to review any of Claimant's previous medical records, went mainly to the weight of the evidence, not the competency of the evidence. It further concluded that Employer failed to establish that there was work available for Claimant within her medical restrictions, as defined by Dr. Iles. The Board dismissed Employer's challenge to the WCJ's authority to determine the

7. 77 P.S. § 531(6). Subsequent to the liability determination by the WCJ, on or about March 10, 1999, although not an issue in this appeal, Employer filed a request for retrospective utilization review. Employer's utilization review request was rejected by the Bureau of Workers' Compensation because Employer failed to properly complete the required form by omitting the billing dates for Claimant's treatment. Employer included documents pertaining to this request in its brief to this Court, although the documents were not contained in the evidentiary record. They form no part of our consideration of this matter, and are mentioned only as a point of clarification.

reasonableness and necessity of Claimant's medical expenses because Employer had not yet filed a utilization review request. Employer's appeal to this Court ensued.[8]

Employer initially argues that the WCJ erred in rendering a determination as to the reasonableness and necessity of Claimant's medical treatment. Employer asserts that we have consistently held that a WCJ lacks jurisdiction to make these threshold determinations and that the reasonableness and necessity of medical bills may **only** be determined under the utilization review process, relying on *Zuver v. Workers' Compensation Appeal Board (Browning Ferris Industries of PA, Inc.)*, 755 A.2d 112 (Pa.Cmwlth.2000).

In *Pennsylvania Turnpike Commission v. Workers' Compensation Appeal Board (Collins)*, 709 A.2d 460, 464 (Pa.Cmwlth. 1998), we were presented with precisely the same issue that Employer raises here. However, we were forced to leave the resolution of this issue "for another day" as the Turnpike Commission waived the issue by failing to raise it before the Board. That day has now arrived.[9]

In 1993, the General Assembly amended the Act by adding provisions for implementing the "utilization review" and "peer review" processes.[10] We addressed the purpose of Act 44 in *Warminster Fiberglass v. Workers' Compensation Appeal Board (Jorge)*, 708 A.2d 517, 519–20 (Pa. Cmwlth.1998) when we said:

> In order to alleviate the dilemma facing employers, while at the same time insuring that claimants would receive necessary treatment and providers could defend their treatment and right to payment, Act 44 was enacted. Section

---

**8.** This Court's standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996). It is the purpose of the reviewing board and/or appellate court to review the WCJ's conclusions of law, while at the same time ascertaining that the facts found by the WCJ are supported by substantial evidence.

**9.** In *Collins*, we stated:

> In its first argument, Employer has posed an intriguing and important issue of first impression to this court; unfortunately, however, Employer has waived its right to raise that issue here by failing to first raise it before the WCAB. Pa. R.A.P. 1551(a). (*See* O.R., Employer's appeal from the WCJ's Findings of Fact and Conclusions of Law.) Thus, consideration of this issue must wait for another day.

*Id.*, 709 A.2d at 463–64.
We also remarked in a footnote accompanying the above paragraph:

> Indeed, Employer could have raised this issue before the WCJ when, after the WCJ

declined to grant Employer's request for [peer review], the WCJ then proceeded to make his own determination regarding the reasonableness and necessity of Dr. Chu's treatment. However, Employer voiced no objection.

> A review of the record indicates that Employer had ample opportunity to raise its contention that, absent [peer review], a WCJ has no authority to determine the reasonableness and necessity of medical treatment in the context of a claim petition. We point out that it was Employer itself that raised the question of the reasonableness and necessity of medical treatment in the Claim Petition proceeding by requesting [peer review] under section 420 of the Act. After Employer raised the matter, the parties and the WCJ engaged in a lengthy discussion of the [peer review] process, but Employer never questioned the WCJ's ability to determine reasonableness and necessity of medical treatment in the event he opted not to grant Employer's [peer review] request.

*Id.*, n. 10.

**10.** The Act was amended in 1993 by the Act of July 2, 1993, P.L. 190, *as amended*, effective August 31, 1993, which is commonly referred to as "Act 44." Regulations relating to utilization review and peer review are set forth in 34 Pa.Code §§ 127.401—127.670.

306(f.1)[(6)(i)] of the Act, 77 P.S. § 531(6)(i), established a new way for employers to challenge the reasonableness of medical treatment .... through a more timely and efficient method that hoped to simultaneously insure that claimants receive needed treatment, and for the first time gave providers a chance to defend their treatment and protect their bills.

(Footnotes omitted.)

Act 44 established the utilization review mechanism as the exclusive means of determining the reasonableness and necessity of *medical treatment.* 77 P.S. § 531. Section 306(f.1)(5) sets forth mandatory payment provisions unless the employer/insurer disputes the reasonableness or necessity of the treatment, whereupon the payment provisions may be tolled. Upon filing for utilization review, the employer/insurer need not pay that portion of the bill that is in dispute, but must pay all bills or portions thereof not in dispute. 77 P.S. § 531(5).

Section 306(f.1)(5) also provides a mechanism for the employer/insurer to dispute the reasonableness of the provider's *fee,* and "the period for filing an application for *fee* review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph [*i.e.,* until utilization review is completed]." 77 P.S. § 531(5).

■ Section 306(f.1)(6) sets forth the procedures to be followed by which parties may have medical treatment reviewed by a utilization review organization (URO).[11] 77 P.S. § 531(6). The implementing regulations provide:

> If an insurer or employer seeks retrospective review of treatment, the request for [utilization review] shall be filed within 30 days of the receipt of the bill and medical report for the treatment at issue. **Failure to comply with the 30–day time period shall result in a waiver of retrospective review.** *If the insurer is contesting liability for the underlying claim, the 30 days in which to request retrospective [utilization review] is tolled pending an acceptance or determination of liability.*

34 Pa.Code § 127.404(b) (emphasis added). It is not disputed in this appeal that, at the time of the WCJ's determination of the claim petition before him, Employer had *not* filed a utilization review petition.[12] However, because the regulation quoted above contains a provision tolling the thirty-day time limit to request utilization review where liability is at issue, it is clear that Employer in this appeal had not waived its right to challenge the reasonableness or necessity of the medical bills that it had received from the Claimant. The thirty-day time period in which to request retrospective utilization review did not commence until the WCJ issued the order in this matter assigning liability to Employer.[13]

11. Section 306(f.1)(6) states in pertinent part:

> Except in those cases in which a workers' compensation judge asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:
>   (i) The reasonableness or necessity of. all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer....

77 P.S. § 531(6) (footnote omitted).

12. See note 7 and accompanying text.

13. While the language tolling the statute for "filing an application for *fee* review" contained in 77 P.S. § 531(5) is not identical to that of the implementing regulation, we think that the phrase "in which to request" contained in 34 Pa.Code § 127.404(b) is synony-

■ This brings us to the second issue: whether the WCJ erred by finding that Claimant's medical bills were reasonable and necessary; both parties rely on our decisions in *Warminster* and *Zuver*, but arrive at a different conclusion. Claimant asserts that *Warminster* establishes that, where no utilization review request has been filed, the WCJ is "permitted to make findings as to the reasonableness and necessity of medical treatment" and "must order that medical bills be paid promptly...." (Claimant's Brief, p. 5.) However, *Warminster* is distinguishable from the instant matter in that, in *Warminster, liability for the injury had been accepted* and a notice of compensation payable (NCP) had been issued, even though no utilization request had been filed. We note that *Warminster* was decided within the context of a termination petition. In the matter before us, no NCP was issued and liability was not finally determined until the resolution of the instant claim proceeding. Therefore, we hold that, because liability had not been established to commence the running of the thirty-day period for filing a utilization review request under 34 Pa. Code § 127.404(b), the WCJ was without jurisdiction to decide the reasonableness and necessity of Claimant's medical expenses. Accordingly, we must vacate the WCJ's Finding of Fact No. 18, and subparagraph "C" of his order.

In *Zuver*, the claimant had filed a claim petition seeking benefits first for total disability, and then for partial disability, as well as for the payment of her medical bills. **The parties stipulated that the WCJ could decide the issue of whether the medical services provided were reasonable and necessary.** The WCJ held that they were, and the employer appealed that determination, arguing that the WCJ had no authority to decide that issue, despite having stipulated that he could. The Board agreed with the employer and the pivotal issue on appeal to this Court was whether the parties could confer subject matter jurisdiction on the WCJ by stipulating that the WCJ could decide whether the medical treatment provided was both reasonable and necessary. We held in *Zuver* that, "[t]he parties cannot short-circuit the process by stipulating to have the WCJ decide this issue [necessity and reasonableness] in a claim petition without first proceeding to utilization review." *Zuver*, 755 A.2d at 114. Therefore, *Zuver* is consistent with our determination that the WCJ erred in deciding the reasonableness and necessity of Claimant's medical expenses.

Employer next argues that the WCJ erred in granting total disability benefits where the testimony of Claimant's chiropractor was inconsistent with Claimant's medical records and her chiropractor had approved her return to light-duty. Claimant asserts that Employer has waived any challenge to a determination that she is totally disabled because it failed to file a timely answer to her claim petition. Further, Claimant maintains that, until her initial injury is recognized as compensable, she has no duty to pursue any job opportunity offered, that the WCJ considered the testimony of Mr. Clark, and that the WCJ obviously found that she could not perform the job that was offered.

■ In a workers' compensation proceeding, the WCJ is the ultimate finder of the facts. *Hayden v. Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corp.)*, 83 Pa.Cmwlth. 451, 479 A.2d 631 (1984). Thus, determinations as to witness credibility and evidentiary weight are within the exclusive province of the WCJ and are not subject to appellate re-

mous with "filing an application" contained in 77 P.S. § 531(5).

view, absent a lack of substantial evidence to underpin those determinations. As the fact finder, the WCJ is entitled to accept or reject the testimony of any witnesses, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa.Cmwlth. 461, 593 A.2d 921 (1991), *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991).

■ Within the context of a claim petition, the burden is on the claimant to establish all the elements necessary to support an award, including the proof of a causal relationship between the claimant's injury and his or her disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993). Every fact alleged in a claim petition, not specifically denied by an answer filed by an adverse party, is deemed admitted. *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board (Madara),* 56 Pa.Cmwlth. 1, 423 A.2d 1125 (1981). Section 416 of the Act provides:

> Within twenty days after a copy of any claim petition or other petition has been served upon an adverse party, he may file with the department or its workers' compensation judge an answer in the form prescribed by the department.
>
> Every fact alleged in a claim petition not specifically denied by an answer so filed by an adverse party shall be deemed to be admitted by him.... **If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented.**

77 P.S. § 821 (emphasis added). Failure to file a timely answer may be rectified upon proof of adequate excuse. *Straub v. Workmen's Compensation Appeal Board (City of Erie),* 114 Pa.Cmwlth. 224, 538 A.2d 965 (1988), *aff'd,* 528 Pa. 347, 598 A.2d 27 (1991). It is undisputed that Employer filed its answer outside the twenty-day time limit prescribed by the Act and that the issue was raised before the WCJ at Claimant's earliest opportunity.[14] When an employer fails to file a timely answer without adequate excuse, every well-pled factual allegation is admitted as true and the Employer is barred from presenting challenges to the allegations in the petition and from presenting any affirmative defenses. *Heraeus Electro Nite Co. v. Workmen's Compensation Appeal Board (Ulrich),* 697 A.2d 603 (Pa.Cmwlth. 1997), *appeal dismissed,* 554 Pa. 512, 721 A.2d 1095 (1999). In the instant matter, the issues deemed admitted are notice, the wage rate, and the date and place of injury. Further, Claimant is entitled to a presumption concerning the work-relatedness of her injury. However, we have held that failure to file a timely answer is not tantamount to a default judgment and the Claimant is still required to prove all elements necessary to satisfy an award, *id.,* and that questions of law are reviewable and cannot be waived by the failure to file a timely answer. *D'Errico v. Workers' Compensation Appeal Board (City of Philadelphia),* 735 A.2d 161 (Pa.Cmwlth. 1999).

■ An employee who experiences an injury based on the aggravation of a pre-existing condition is entitled to benefits if she shows that the aggravation arose in the course of employment, the aggravation was related to the employment, and disability resulted. *Povanda v. Work-*

---

**14.** Inexplicably, it is also clear that the WCJ did not consider the effect of the untimely filing in rendering his opinion, nor did the Board address the matter on appeal.

men's Compensation Appeal Board (Giant Eagle), 146 Pa.Cmwlth. 320, 605 A.2d 478 (1992), petition for allowance of appeal denied, 533 Pa. 603, 617 A.2d 1276 (1992). To show that an injury was related to employment, the employee must establish a causal connection between work and the injury. Id. When the connection between the injury or the aggravation and work is not obvious, unequivocal medical testimony is necessary. Id. Moreover, where a claimant had an underlying condition that is not work related, she must show continuing existing disability in order to receive benefits. McCabe v. Workers' Compensation Appeal Board (Department of Revenue), 738 A.2d 503 (Pa.Cmwlth.1999). Therefore, if restrictions are placed on a claimant that are causally related to the work-related aggravation, the claimant is entitled to benefits. Reinforced Molding Corp. v. Workers' Compensation Appeal Board (Haney), 717 A.2d 1096 (Pa. Cmwlth.1998), petition for allowance of appeal denied, —— Pa. ——, 794 A.2d 365 Pa. 1999), 1999 Pa. LEXIS 300.

■ Employer maintains, relying on our Supreme Court's opinion in Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.), 547 Pa. 639, 692 A.2d 1062 (1997), that, because Dr. Iles' findings were based on an incomplete and inaccurate medical history and because Dr. Iles' himself testified that, if Claimant's medical history had not been as she indicated, his evaluation would be incorrect, that, as a matter of law, Dr. Iles' opinion is incompetent as to causation. Employer argues that, because the testimony of Dr. Iles showed that he had no knowledge of Claimant's prior relevant medical records and treatment, or any previous diagnostic test results, his testimony on causation had no competent basis. We must agree.[15] Further, we hold that Employer did not waive its right to challenge the Claimant's evidence, via the doctor's testimony, simply because no answer or a late answer had been filed.

■ Moreover, while Employer is barred from asserting affirmative defenses to the allegations contained in Claimant's claim petition, Claimant is only entitled to a rebuttable presumption that her disability continues after the last date that Employer should have filed an answer. Heraeus. Employer is not barred, therefore, from presenting evidence itself, or attempting to discredit the Claimant's evidence, to rebut the presumption that Claimant's disability continues into the indefinite future. Id.

15. On appeal, Employer has **not** challenged the work-related causation of the original injury, which occurred on January 30, 1997, and the immediate subsequent disability of the Claimant based upon the incompetent testimony of Dr. Iles, because Employer's *own* medical expert, Dr. Jack Smith, after his examination of the Claimant on June 9, 1997, "opined that the employee *had* sustained a lumbosacral strain ... that was superimposed on degenerative arthritis and degenerative disc disease of the lumbar spine.... [He] further opined that he could not attribute any of her January 30, 1997 injury to any *further* disability that the employee was having...." (Finding of Fact No. 9, WCJ Decision dated February 17, 1999, p. 7) (emphasis added).

Based upon the testimony of the Employer's own expert, therefore, there was substantial and unequivocal medical testimony that the Claimant's original injury and disability was work related.

Employer argued on appeal that the WCJ's decision was not supported by substantial evidence only with regard to Claimant's disability *after* she had failed to return to work on January 5, 1998. In the "summary of argument" section of Employer's brief, Employer states: "the award of **ongoing** total disability benefits was unsupported by substantial evidence because Claimant's own medical expert, [Dr.] Iles, testified credibly that Claimant was capable of performing the light-duty position offered...."

Both Dr. Iles and Dr. Smith testified that Claimant was capable of light-duty work. Employer offered the testimony of Mr. Clark to the effect that a light-duty position was available to Claimant within her work restrictions and now requests that we reverse the award of ongoing total disability benefits because it has demonstrated work availability. Employer takes particular exception to the Board's statement that the WCJ committed no error "since [Employer] failed to establish there was work available within the perimeters [sic] of the credible doctor." (Board opinion, p. 7.)

■ We find that the WCJ failed to render any findings as to job availability. The evidence of record indicates that Claimant did perform a brief period of light-duty work for Employer following her work injury. Testimony by Mr. Clark indicated that Claimant's "order taker" job is still available and that Employer is willing to make whatever concessions are necessary to have this employee return to gainful employment. We observe that these facts are supplemented by the testimony of both medical experts, who testified that Claimant is not capable of returning to her pre-injury position, but testified that she is capable of light-duty work. Yet there is no finding of fact with regard to job availability or whether Claimant is capable of performing the "order taker" position. Therefore, we must vacate the order of the Board and remand this case to the Board for remand to the WCJ with instructions to render findings of fact, based on the testimony before him, on job availability and, if there is job availability, whether Claimant is capable of performing the job.

Accordingly, we affirm the order of the Board in so far as it determined that Claimant was entitled to total disability benefits from January 30, 1997 through January 5, 1998, vacate the order of the Board where it affirmed the award by the WCJ of ongoing total disability benefits from January 6, 1998 into the future, and remand this matter to the Board for remand to the WCJ for a determination of job availability and Claimant's ability to do an available job.

### ORDER

**NOW,** *February 25, 2002,* we vacate Finding of Fact No. 18 and Conclusions of Law No. 6 and 7 of the Workers' Compensation Judge's opinion and order. We affirm the order of the Workers' Compensation Appeal Board in so far as it determined that Claimant was entitled to total disability benefits from January 30, 1997 through January 5, 1998. We vacate the order of the Workers' Compensation Appeal Board where it affirmed the award by the Workers' Compensation Judge of total disability benefits from January 6, 1998 into the future and remand this matter to the Workers' Compensation Appeal Board for further remand to the Workers' Compensation Judge for determinations of job availability and Claimant's ability to do an available job.

Jurisdiction relinquished.

Judge SMITH–RIBNER dissents.