# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yocelene Bertresse,               :
                Petitioner     :
                            :
             v.             :   No. 436 C.D. 2020
                            :   Submitted: December 11, 2020
Workers' Compensation Appeal Board,  :
(Vitas Healthcare Corp.),        :
                Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge[1]
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: April 13, 2021**

Yocelene Bertresse (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) Decision and Order (Decision), denying Claimant's Claim Petition on the basis that Claimant did not establish that she sustained a work-related injury, or an aggravation of a preexisting work-related injury, resulting in disability. On appeal, Claimant argues that the WCJ erred in finding that Claimant did not meet her burden of proof because the WCJ's findings were not supported by

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

substantial, competent evidence, the WCJ's credibility determinations were in error, and the WCJ's Decision was not reasoned. Upon review, we affirm.

### I. Background

*A. Claim Petition*

On May 24, 2018, Claimant filed the Claim Petition alleging that, on April 2, 2018, she sustained a work-related injury that included, but was not limited to, the aggravation of a 2013 work injury to her left knee.[2] (WCJ Decision, Finding of Fact (FOF) ¶ 1; *see* Claim Petition, Reproduced Record (R.R.) at 4a.) Claimant sought partial disability benefits from April 2, 2018, through April 23, 2018, and full disability benefits from April 24, 2018, forward. (R.R. at 6a.) Claimant later stipulated that she sought workers' compensation (WC) benefits for a closed period of time between April 24, 2018, and August 19, 2018, after which her benefits would be suspended. (FOF ¶ 4; R.R. at 94a.[3]) Vitas Healthcare Corporation (Employer) filed an Answer denying the Claim Petition's material allegations. (R.R. at 8a-11a.) On June 26, 2018, Employer issued a Medical-Only Notice of Temporary Compensation Payable for an injury to Claimant's left knee in the nature of "[a]ll [o]ther [c]umulative [i]njury, NOC,"[4] which converted to a Medical-Only Notice of Compensation Payable (NCP) by operation of law. (*Id.* at 14a-16a.)

---

[2] The Claim Petition lists the initial injury as having occurred on April 17, 2013, but the record reflects that Claimant slipped and fell at work on February 18, 2013. (Reproduced Record (R.R.) at 70a-71a.) We also note that the record contains no indication that a workers' compensation claim was filed for that initial injury.

[3] On the record, the WCJ noted that there was a possibility that Claimant would file an additional petition seeking the reinstatement of benefits as of September 7, 2018. (R.R. at 95a.) The record does not reflect that such a petition was filed.

[4] It is unclear from the record what "NOC" meant.

The matter was assigned to a WCJ for disposition. Claimant testified by deposition on July 17, 2018, and live before the WCJ on January 9, 2019. (*Id.* at 69a, 90a, 92a.) Employer presented two medical reports completed by David L. Rubenstein, M.D. (*Id.* at 80a-85a, 86a-89a.)

### B. Claimant's Evidence

In support of her Claim Petition, Claimant testified as follows.[5] In 2005, Claimant started working for Employer as a certified nursing assistant (CNA). As a CNA, she makes home visits to up to five to seven patients each day. She is responsible for washing, feeding, and moving patients to and from their beds, which involves a lot of bending and turning of her legs and use of her knees to protect her back. She might physically struggle with these tasks depending on a patient's weight.

In February 2013, Claimant was going down steps when she slipped and injured her left knee. A magnetic resonance imaging (MRI) scan revealed that Claimant had torn her meniscus. Claimant was given a cortisone shot and underwent several sessions of physical therapy. Claimant was placed on light-duty work restrictions performing administrative tasks until her treating physician released her to full-duty work. However, between April 2013 and April 2018, Claimant continued experiencing pain in her left knee. Claimant testified that she often complained to her family doctor about the pain but that she declined treatment because of the cost. Claimant stated that she had not sustained any other injuries to her left knee before or after the 2013 incident.

---

[5] Claimant's testimony can be found on pages 69a-79a and 100a-21a of the Reproduced Record and is summarized in the WCJ's Decision in Finding of Fact 2.

Claimant testified that there was no specific injury or event that occurred on April 2, 2018, which led her to file the Claim Petition. Instead, the pain in her left knee had continued and, by April 2018, worsened to the point that she could no longer tolerate it. Once she complained about the pain to Employer and provided a doctor's note, she was permitted to perform light-duty work. Claimant stopped working on April 23, 2018, explaining that Employer "really [did not] have any light[-]duty" work for her and that she had to leave town to attend her brother's funeral. (R.R. at 109a.)

Claimant stated that she had outpatient surgery on her left knee in June 2018 and began physical therapy after that. She stated that the surgery helped "[a] little bit" but that she was still in pain. (*Id.* at 76a, 110a.) Claimant testified that if permitted, she would try to return to work. She acknowledged that she could "definitely" perform light-duty work as she did in April 2013. (*Id*. at 77a-78a.)

Claimant submitted medical records from 2013 and 2018 in further support of her Claim Petition.[6] These records indicate that after her February 2013 knee injury, she was released to full-duty work on April 17, 2013, by the Muscle, Bone and Joint Center. Relevant to 2018, Claimant first received treatment from Concentra Medical Center (Concentra), Employer's panel provider, on April 2, 2018, at which time she was diagnosed with "sprain of unspecified site of left knee." (*Id*. at 17a.) Her treating provider at Concentra indicated that Claimant could work her entire shift, but that she "[s]hould be sitting 75% of the time" and "[c]hange positions periodically to relieve discomfort." (*Id.*) She returned to Concentra for physical therapy on April 4 and April 9, 2018. (*Id*. at 18a-19a.)

---

[6] Claimant's medical records can be found on pages 17a-68a of the Reproduced Record and are summarized in the WCJ's Decision in Finding of Fact 6.

4

Claimant was also treated by Richard E. Grant, M.D., and Andrew B. Beaver, M.D., orthopedic specialists in the Einstein Healthcare Network. Claimant first saw Dr. Grant on April 13, 2018, "complain[ing] of pain and stiffness in her left knee at all times during the day and [an] increase with activity such as prolonged walking[,] prolonged standing[, and] ascending or descending stairs." (*Id.* at 22a.) Dr. Grant diagnosed Claimant with "[p]rimary osteoarthritis of [the] knee" and a "[l]ateral meniscus tear[,]" and performed a "[j]oint aspiration/injection procedure" on her left knee. (*Id.*) After the injection procedure, Claimant "reported a marked reduction in her pain and discomfort." (*Id.* at 23a.)

Per Dr. Grant's orders, Claimant underwent an MRI on April 23, 2018. Based on the results of the MRI, Dr. Grant diagnosed Claimant with tricompartmental osteoarthritis and a medial meniscus tear in her left knee. (*Id.* at 35a.) Dr. Grant concluded that the condition of Claimant's left knee was worsening and impacting her activity level, ambulation, and household functions. He also noted that Claimant's symptoms, due to the worsening, included "crepitus, gait disturbance, joint pain[,] and joint stiffness." (*Id.* at 33a.) Claimant told Dr. Grant that she would be going out of town until May 11, 2018, to attend her brother's funeral, and Dr. Grant advised Claimant to make an appointment with Dr. Beaver upon her return to discuss her treatment options based on the results of the MRI.

On May 14, 2018, Dr. Beaver diagnosed Claimant with a medial meniscus tear and degenerative joint disease of the knee based on a physical examination and a review of Claimant's medical history and recommended that Claimant undergo a diagnostic operative arthroscopy to see the status of her left knee in extreme detail. On June 12, 2018, Dr. Beaver performed a left knee arthroscopy and a partial medial meniscectomy, which confirmed his diagnosis of a medial meniscus tear and

5

degenerative joint disease in Claimant's left knee. At a follow-up visit on June 20, 2018, Claimant indicated that she was still having some pain and felt unsteady when walking. Dr. Beaver reported that Claimant was "[p]rogressing as expected" but referred her to "physical therapy for range of motion and gait training." (*Id.* at 46a.)

After a follow-up visit with Claimant on August 1, 2018, Dr. Beaver reported that Claimant's "motion [was] much improved" and that her overall condition was "gradually improving." (*Id.* at 59a.) Dr. Beaver again prescribed physical therapy and noted that if Claimant did not improve by the time he saw her again in six or eight weeks, he would consider a cortisone injection. Claimant was discharged from post-operative physical therapy on September 20, 2018. On September 24, 2018, Claimant saw Dr. Beaver, who "counseled [Claimant] again that she did have some arthritic findings at the time of her surgery" and that "[s]he may be having some persistent symptoms as a result of that." (*Id.* at 62a.) Dr. Beaver again prescribed more physical therapy and the two discussed a cortisone injection. Claimant stated that she would consider the injection if the therapy did not work. On the same day, Dr. Beaver released Claimant to return to work with light-duty restrictions. Claimant was discharged from physical therapy on November 15, 2018, "due to insurance coverage[,]" but showed improvement in her movement. (*Id.* at 65a.)

### *C. Employer's Evidence*

Employer presented the two medical reports of Dr. Rubenstein.[7] After a physical examination of Claimant on September 25, 2018, and a review of her medical history dating back to 2013, Dr. Rubenstein concluded that Claimant had not sustained a work-related injury on April 2, 2018, resulting in disability. Claimant

---

[7] Dr. Rubenstein's reports can be found on pages 80a-89a of the Reproduced Record and are summarized in the WCJ's Decision in Findings of Fact 10 and 11.

advised Dr. Rubenstein that she did not sustain an injury on April 2, 2018; rather, the pain in her left knee "is something [Claimant] indicate[d] was a progression of an injury that occurred [five] years before that." (*Id*. at 83a.) Dr. Rubenstein opined that Claimant's 2013 left knee injury "appeare[d] to be a combination of a knee contusion and mild [medial collateral ligament] sprain . . . ." (*Id*. at 85a.) He further opined that although Claimant appeared to have recovered from the 2013 injury, "that d[id] not mean she would not develop knee pain at a later time in her life. Simply because she had pain in 2018 does not mean it is related to work activities." (*Id.*) He concluded that Claimant's pain "appears to be a natural progression of arthritis and possibly a progression of a preexisting meniscal tear." (*Id.*) Dr. Rubenstein did not find any evidence of an injury that occurred on April 2, 2018.

Dr. Rubenstein submitted a supplemental report on December 12, 2018, after reviewing the records of both Dr. Grant and Dr. Beaver. Based on his review of this history, Dr. Rubenstein opined that Claimant's "alleged injury[] was consistent with the history of prior knee damage" and arthritic changes that were present before April 2018. (*Id*. at 89a.) He further opined that "[t]here was no indication of any fractures, dislocations, osteochondral injuries, bone bruises, or traumatic ligamentous injuries, and there was no indication of any significant effusion." (*Id.*) Dr. Rubenstein concluded that Claimant's condition indicated "obvious evidence of clear unequivocal preexisting degenerative changes without any evidence of material exacerbation thereof." (*Id.*) He asserted that

> separate from any causality issues, [Claimant's] diagnosis is that of degenerative joint disease and simply because she has degenerative joint disease does not mean she is incapable of working, but any limitations referable to her [degenerative joint disease] would be related to her arthritic symptomatology and unrelated to anything that occurred in April of 2018.

7

(*Id*.)  In other words, Claimant's disability was not related to a work event.

*D. WCJ Decision*

In a March 26, 2019 Decision, the WCJ made the following credibility determinations.  (FOF ¶¶ 12-14.)  As to Claimant, noting that the WCJ was able to observe Claimant testify at a hearing, the WCJ credited Claimant's testimony regarding an injury to her left knee in 2013, her subsequent treatments in both 2013 and 2018, her surgery in 2018, and her reports of continued pain.  (*Id.* ¶ 12.)  However, the WCJ discredited Claimant's testimony "to the extent she relate[d] her 2018 treatment, surgery, and disability to a 2018 work-related event or to cumulative trauma."  (*Id.*)  The WCJ credited the evidence related to Claimant's history of medical treatment, but concluded that it was not sufficient to "establish [that] a work-related injury occurred on April 2, 2018[,] that resulted in disability."  (*Id.* ¶ 13.)  Claimant also failed to present medical evidence that Claimant's disability and her June 12, 2018 surgery "result[ed from] a cumulative trauma/cumulative aggravation type of injury."  (*Id.*)  Further, Claimant's evidence did not establish that Dr. Grant or Dr. Beaver "took Claimant out of work in April 2018, and neither of them offered any opinion that the Medical[-]Only injury of April 2, 2018, ha[d] any relevance with regard to Claimant's subsequent disability or surgery."  (*Id.*)

As to Employer's evidence, the WCJ credited Dr. Rubenstein's opinions as set forth in his reports.  (*Id*. ¶ 14.)  In so doing, the WCJ accepted, as fact, Dr. Rubenstein's opinion that "Claimant's [left knee] pain in 2018 appear[ed] to be a natural progression of arthritis and possibly a progression of a pre[]existing meniscal tear[,]" and that although Claimant's arthritis became progressive and symptomatic, it did not mean that her pain was related to her work activities.  (*Id.*)  The WCJ also accepted, as fact, Dr. Rubenstein's opinion that Claimant's 2018 MRI was consistent

8

with her prior knee injury and her history of arthritic changes that existed before April 2018 and that "there was no evidence of a material exacerbation of Claimant's preexisting arthritic changes." (*Id.*) Lastly, the WCJ found that any limitations caused by Claimant's "degenerative joint disease would be related to her arthritic symptomatology," instead of anything that occurred in April 2018. (*Id.*)

Based on the credibility determinations and factual findings, the WCJ concluded that Claimant failed to prove that she sustained an injury on April 2, 2018, or an aggravation of her 2013 injury, which "resulted in disability beginning April 24, 2018." (WCJ Decision, Conclusions of Law (COL) ¶¶ 2, 3.) The WCJ further concluded that Claimant failed to prove that her June 12, 2018 surgery was related to an injury sustained on April 2, 2018, or an aggravation of her 2013 injury. (*Id.* ¶ 4.) Thus, the WCJ denied and dismissed the Claim Petition.

### E. Board Opinion

Claimant appealed the WCJ's Decision to the Board, which affirmed. The Board rejected Claimant's argument that the WCJ's Decision was not supported by substantial, competent evidence. The Board, noting that the WCJ rejected Claimant's testimony as to causation and instead credited the testimony of Dr. Rubenstein, would not disturb those credibility determinations given a WCJ's discretion to accept or reject the testimony of any witness and to determine evidentiary weight. Based on the WCJ's determination that Claimant's testimony as to causation was not credible, and that Claimant's medical records did not establish that Claimant's disability and June 12, 2018 surgery were work related, the Board determined that Claimant failed to meet her burden of proving that her left knee condition, and treatment and surgery therefor, were related to an April 2, 2018 work injury or an aggravation of her 2013 left knee injury. According to the Board,

9

the WCJ explained the reasons for rejecting part of Claimant's testimony as not credible and why Dr. Rubenstein's contrary reports were accepted. The Board therefore held that because the WCJ chose to credit Dr. Rubenstein's opinion that Claimant did not sustain a work-related injury or an exacerbation of a preexisting injury on April 2, 2018, and that her knee condition was due to preexisting, degenerative changes, Claimant could not meet her burden of proof on her Claim Petition. Claimant now petitions this Court for review.[8]

## II. Claimant's Appeal to this Court

### A. Parties' Arguments

Claimant argues that the Board erred in affirming the denial of her Claim Petition because the WCJ's Decision was not supported by substantial evidence. Claimant contends that the WCJ ignored substantial evidence documenting her 2013 injury, which included a meniscus tear that deteriorated over the course of five years into a state requiring arthroscopic surgery, and "rejected the natural and logical conclusion from this evidence that [Claimant] suffered a work[-]related disability [as] of April 2, 2018[,] due to a cumulative/aggravation type injury originating from the 2013 work accident." (Claimant's Brief (Br.) at 29.) According to Claimant, her providers, Employer's panel of physicians at Concentra, and even Dr. Rubenstein acknowledged that Claimant's condition was a combination of degenerative conditions in addition to a progression of the 2013 injury. Claimant further asserts the WCJ improperly found that the Medical-Only NCP, in which

---

[8] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

10

Employer acknowledged a work-related knee injury, had no relevance to the Claim Petition.

Claimant also challenges the WCJ's decision to credit Dr. Rubenstein's opinions. This credibility determination was error, Claimant contends, because "Dr. Rubenstein's opinions were hardly rendered with a reasonable degree of medical certainty." (*Id.*) According to Claimant, Dr. Rubenstein's conclusions were "inconsistent and ambivalent" because he conceded that Claimant's current condition was due, in part, to progressive deterioration of the left knee caused by the 2013 work incident. (*Id.*) Claimant argues that the WCJ's determinations were "irrational," "unfair," and "possibly motivated by a desire to avoid further litigation" if Claimant filed a reinstatement petition because light-duty work had become unavailable to her after August 2018. (*Id.* at 30.)

Claimant asserts that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act),[9] 77 P.S. § 834, because the WCJ did not adequately explain the reasons supporting the credibility determinations. According to Claimant, the WCJ did not articulate an objective basis for discrediting Claimant's evidence that her 2018 treatment, surgery, or disability were related to a 2018 work injury, or that the condition of her left knee after the 2013 injury worsened over the course of five years.

Employer responds that there was no error because Claimant did not meet her burden of proof where the WCJ did not credit Claimant's evidence that her 2018 surgery and disability were related to a work accident. Employer contends that Claimant's arguments to the contrary are based on a mischaracterization and misreading of both the record and the WCJ's Decision. According to Employer,

---

[9] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

11

Claimant's evidence could not support an award, even if credited. Employer asserts that even though Claimant testified that her 2018 condition, treatment, surgery, and disability were related to the 2013 injury or aggravation thereof, she was not competent to provide an opinion as to causation. Further, none of the medical records upon which Claimant relied related her condition, surgery, or disability to her work, either in 2013 or in 2018. Employer maintains that there was only one medical opinion offered, Dr. Rubenstein's, and that opinion did not support a finding that Claimant's surgery and disability were related to a work injury. Last, noting that the record contains no indication of a WC claim from 2013, Employer argues that Claimant cannot now pursue WC benefits by using the 2013 injury as the basis for her claim.

As to her burden of proving disability, Employer also argues that Claimant provided no evidence that she was disabled as of April 24, 2018, especially since Claimant testified that she left her job on that date to attend her brother's funeral, and none of Claimant's providers told her she could not work beginning on that date. Even though Employer accepted the allegation that Claimant suffered an injury on April 2, 2018, Employer argues that the injury recognized in the Medical-Only NCP was limited to that described in the Concentra documents, *i.e.*, a left knee sprain, and Claimant still had to prove that her subsequent disability and surgery were related to that injury.

Employer contends that the WCJ gave multiple reasons for her credibility determinations, each supported by the record, and that these determinations should not be disturbed by this Court on appeal. Per Employer, the WCJ rejected the portion of Claimant's testimony as to causation because there was no supporting medical evidence. As for Claimant's challenge to Dr. Rubenstein's accepted opinions,

12

Employer argues that his opinions were uncontroverted and support the WCJ's findings of fact. In sum, Employer argues that the WCJ's findings of fact are supported by substantial evidence and that the WCJ's conclusions of law are fully supported and consistent with the findings of fact.

After setting forth the relevant standards for reviewing claim petition proceedings and a substantial evidence challenge, we will address these arguments in turn.

### B. Discussion

In a claim petition proceeding, the claimant bears the burden of establishing all of the elements necessary to support an award of WC benefits, including the existence of an injury and disability, and a causal relationship between the injury and the work incident. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). In this context, disability is the loss of earnings or earning power caused by the work-related injury. *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999).

Where the causal relationship between the work incident and the injury is not obvious, unequivocal medical evidence is necessary to establish that relationship. *Roundtree v. Workers' Comp. Appeal Bd. (City of Phila.)*, 116 A.3d 140, 144-45 (Pa. Cmwlth. 2015). When unequivocal medical evidence is necessary, "the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in [the witness's] professional opinion[,] the result in question did come from the assigned cause." *Berks Cnty. Intermediate Unit v. Workmen's Comp. Appeal Bd. (Rucker)*, 631 A.2d 801, 804 (Pa. Cmwlth. 1993). Medical evidence that is less than positive or that is based on possibilities is equivocal and, therefore, is not legally competent evidence that establishes the

13

necessary causal relationship. *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690-91 (Pa. Cmwlth. 2011). "Whether an expert's opinion is competent is a question of law subject to plenary review." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

In reviewing a substantial evidence[10] challenge, we "consider the evidence as a whole, view the evidence in a light most favorable to the party [that] prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (en banc) (internal quotation marks omitted). Where both parties present evidence, it does not matter if there is evidence that supports a contrary finding; the only question is whether there is evidence that supports the findings that were made. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 515 (Pa. Cmwlth. 2002). "The WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002). It is well-settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998). In the rare instances where we review a credibility determination, "[w]e must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

---

[10] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kriebel*, 29 A.3d at 769.

To prevail on her Claim Petition, Claimant had to present evidence establishing that she sustained a work-related injury that resulted in disability or a loss of earnings. Claimant's evidence sought to establish that she sustained a work injury on February 18, 2013, and that this injury caused her disability beginning on April 24, 2018, as well as required surgery in June 2018. Because the causal connection between Claimant's injury and disability is not obvious,[11] Claimant needed to present unequivocal medical evidence to establish that causal relationship. *Roundtree*, 116 A.3d at 145. "[M]edical testimony is unequivocal if a medical expert testifies, after providing a foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011). Claimant's evidence lacked any testimony or opinion by a medical expert relating Claimant's disability and surgery to a work-related injury.

As the Board noted in its opinion, the WCJ "found that Claimant's medical evidence did not establish that Claimant's disability and her June 12, 2018[] surgery were the result of a cumulative trauma/aggravation type of injury, or that Claimant's medical-only April 2, 2018[] injury had any relevance with regard to Claimant's subsequent disability or surgery." (Board Opinion at 5.) Like the WCJ and the Board, our review of the medical records submitted by Claimant reveals no evidence of an unambiguous expression of opinion by a medical expert regarding the cause of Claimant's injury and disability. Instead, any indication that Claimant's disability

---

[11] "An 'obvious' connection involves a nexus that is so clear that an untrained lay person would not have a problem in making the connection between the new symptoms and the compensated injury; the new symptoms would be a natural and probable result of the injury." *Roundtree*, 116 A.3d at 144 (citation omitted).

15

was caused by the 2013 injury to her left knee, or the aggravation thereof,[12] is based on Claimant's recitation of her own medical history. Accordingly, we conclude that the WCJ properly denied the Claim Petition based on Claimant's failure to present unequivocal medical evidence establishing either an April 2018 work-related injury that resulted in her disability or an aggravation of her 2013 injury resulting in disability. *See Roundtree*, 116 A.3d at 145.

Claimant argues that the WCJ did not properly consider the Medical-Only NCP. However, the WCJ found that neither Dr. Beaver nor Dr. Grant opined that Claimant's April 2, 2018 work injury, accepted in the Medical-Only NCP, had any relevance to Claimant's subsequent disability or surgery. (FOF ¶ 13.) Per the Concentra documents, Claimant's work injury was a "sprain of unspecified site of left knee." (R.R. at 17a-19a.) Concentra prescribed physical therapy and placed restrictions on Claimant's activities, but did **not** remove Claimant from her job. (*Id.*) It was this injury to which the Medical-Only NCP was addressed. Further, although Claimant argues that "the natural and logical conclusion" from the accepted injury was the knee surgery, (Claimant's Br. at 29), that surgery was not related to a knee sprain, but to Claimant's degenerative joint disease of the knee and medial meniscus

---

[12] A claimant seeking to obtain WC benefits for an injury based on the aggravation of a preexisting condition must "show[] that the aggravation arose in the course of employment, the aggravation was related to the employment, and disability resulted." *Chik-Fil-A v. Workers' Comp. Appeal Bd. (Mollick)*, 792 A.2d 678, 688 (Pa. Cmwlth. 2002). A claimant with a preexisting, non-work-related condition is not entitled to benefits where the employment did not cause or aggravate the condition, even if the claimant is disabled from the workplace because of the condition. *Vazquez v. Workmen's Comp. Appeal Bd. (Masonite Corp.)*, 687 A.2d 66, 69 (Pa. Cmwlth. 1996). Additionally, an injury or disability that results from the natural progression of a preexisting condition is not a compensable condition. *Farquhar v. Workmen's Comp. Appeal Bd. (Corning Glass Works)*, 528 A.2d 580, 587 (Pa. 1987). Instead, a work-related "incident must materially contribute to a claimant's disability in order for that incident to be" considered a work-related aggravation. *Locher v. Workers' Comp. Appeal Bd. (City of Johnstown)*, 782 A.2d 35, 38 (Pa. Cmwlth. 2001).

16

tear, (R.R. at 46a). Accordingly, the Medical-Only NCP does not, as Claimant contends, support the grant of the Claim Petition.

Claimant also argues that the WCJ ignored Dr. Rubenstein's statements that Claimant's current condition was a progression of Claimant's prior meniscus tear and injury of "five years earlier," which she claims support the existence of a work-related aggravation of the 2013 work injury and related disability. (Claimant's Br. at 28-29.) However, Claimant's argument is premised on **her** testimony that she sustained a medial meniscus tear when she fell at work in February 2013. Although Claimant testified to this fact, and told her treating physicians this, a review of the record does not support her claim. Claimant's work release from the Muscle, Bone and Joint Center dated April 17, 2013, does not reflect a meniscus tear in Claimant's left knee as her injury. (R.R. at 20a.) There is a check box for "Ligament Tear Knee L/R," but that box is not checked, and the written note does not indicate any such tear. (*Id.*) Additionally, Dr. Rubenstein set forth his review of Claimant's medical records from 2013 and indicated in his reports that "[Claimant] was diagnosed [with] a sprain and strain" with underlying degenerative joint disease and a knee contusion, that a physician at that time indicated that the meniscal tear found in the MRI was not "an acute injury nor was it the nature of [Claimant's] problem," and that, in his opinion, the 2013 injury "appear[ed] to be a combination of a knee contusion and mild [median cruciate ligament (]MCL[)] sprain based upon the records [he] reviewed and the radiographic studies [from 2013 that he] reviewed . . . ." (*Id.* at 80a-85a.) Dr. Rubenstein did indicate that Claimant's pain "appear[ed] to be a natural progression of arthritis and possibly a progression of a preexisting meniscal tear," but he did not, as Claimant suggests, relate the meniscal tear to a 2013 work injury. (*Id.* at 85a.) Because there is no evidence, beyond Claimant's testimony,

17

that supports Claimant's contention that she sustained a work-related meniscal tear in her left knee in 2013, Dr. Rubenstein's statements that Claimant's condition in 2018 was "possibly," (*id.*), due to the progression of that injury does not support a finding that Claimant's 2018 surgery and disability were work-related and compensable under the Act.

Claimant next asserts that the WCJ's decision to credit Dr. Rubenstein's medical opinions was in error. Claimant states that she "finds it incredible that the [Board], in affirming [the WCJ's D]ecision, found Dr. Rubenstein's medical **testimony unequivocal** (particularly in light of the fact that the doctor did not even testify because the medical evidence [was] comprised solely [of] a record submission)[.]" (Claimant's Br. at 30 (emphasis in original).)

We first note that Claimant initiated this litigation by filing a Claim Petition. Accordingly, Employer did not bear the burden of proof in this matter and was not required to present unequivocal medical evidence. On the contrary, as indicated above, Claimant had the burden of establishing that she sustained a work-related injury and the duration of any subsequent disability. *Giant Eagle, Inc.*, 725 A.2d at 876. Until Claimant satisfied her burden of proof, which she failed to do, Employer had no obligation to present any evidence in rebuttal. *Bonegre v. Workers' Comp. Appeal Bd. (Bertolini's)*, 863 A.2d 68, 72 (Pa. Cmwlth. 2004). In any event, we are not persuaded by Claimant's argument that the WCJ erred by relying on Dr. Rubenstein's opinions because they were "inconsistent and ambivalent." (Claimant's Br. at 29.) Initially, Dr. Rubenstein opined:

> I do not find any evidence of a work-related injury that occurred on 04/02/18 to her left knee. It is clear this is a woman who was harboring arthritis that became progressive and finally symptomatic. She did have an injury back in 2013, which appears to be a combination of a knee contusion and mild MCL sprain based upon the records I reviewed and

18

the radiographic studies I reviewed at that time. She appeared to recover from that, but that does not mean she would not develop knee pain at a later time in her life. Simply because she had pain in 2018 does not mean it is related to work activities. It appears to be a natural progression of arthritis and possibly a progression of a preexisting meniscal tear. But, I do not find any evidence of an injury that occurred on 04/02/18.

(R.R. at 85a.) After reviewing records from Claimant's April 23, 2018 MRI and her June 2018 surgery, Dr. Rubenstein later opined:

On 04/23/18 the MRI study, which was performed within a reasonable timeframe following the alleged injury, was consistent with the history of prior knee damage and was consistent with a history of arthritic changes that were clearly present prior to April of 2018. There was no indication of any fractures, dislocations, osteochondral injuries, bone bruises, or traumatic ligamentous injuries, and there was no indication of any significant effusion. This would indicate obvious evidence of clear unequivocal preexisting degenerative changes without any evidence of material exacerbation thereof.

(*Id*. at 89a.) Dr. Rubenstein explained that Claimant's "diagnosis is that of degenerative joint disease and simply because she has degenerative joint disease does not mean she is incapable of working, but any limitations referable to her [degenerative joint disease] would be related to her arthritic symptomology and unrelated to anything that occurred in April of 2018." (*Id.*) These opinions were made "within a reasonable degree of medical certainty." (*Id.* at 85a, 89a.)

A review of Dr. Rubenstein's reports reveals that his medical opinions were neither inconsistent nor ambivalent. Both reports provide that Claimant's left knee injury was due to the progression of her preexisting arthritis that worsened over time, rather than a specific injury or aggravation of the 2013 work injury. Reviewing Dr. Rubenstein's reports as a whole and in the light most favorable to Employer as the party that prevailed before the WCJ, we conclude that a reasonable mind could

19

accept Dr. Rubenstein's opinion as adequate to support the finding that Claimant's 2018 treatment, surgery, and disability were not a result of an aggravation of the 2013 work injury, or a result of anything that occurred at work on April 2, 2018. Therefore, such testimony constitutes substantial evidence to support the WCJ's finding. *Kriebel*, 29 A.3d at 769-70. Further, there is nothing in Dr. Rubenstein's testimony that would support a determination that the WCJ's "credibility determination [was] arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational," *Casne*, 962 A.2d at 19, such that the determination should be reversed.

Finally, Claimant contends that the WCJ's Decision was not reasoned as required by Section 422(a) of the Act.[13] Claimant maintains that the WCJ's Decision was not reasoned because the WCJ failed to explain why the WCJ credited Dr. Rubenstein's opinions over Claimant's testimony and other evidence.

For purposes of Section 422(a) of the Act, "a decision is 'reasoned' . . . if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A

---

[13] Section 422(a) reads, in part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). As noted, in WC proceedings, "the WCJ has the exclusive authority to make findings of fact and credibility [and evidentiary weight] determinations." *Id.* The reasoned decision requirement "does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations"; "[u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). Where a claimant has provided both live and deposition testimony and there is contextual overlap between the claimant's live and deposition testimony, a WCJ is not required to provide objective reasons for crediting or discrediting the claimant's testimony. *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 77 (Pa. Cmwlth. 2012). Rather, "a WCJ's observation of a witness's demeanor alone is sufficient to satisfy the reasoned decision requirement." *Id.* (citing *Daniels*, 828 A.2d at 1052-53).

Here, in addition to testifying via deposition, Claimant testified live before the WCJ. On both occasions, Claimant explained her work duties and responsibilities, her 2013 injury and subsequent treatment, the events of 2018, and her continued pain. The WCJ, based on that live testimony, and acting as fact finder, determined that not all of Claimant's testimony was credible. Specifically, the WCJ rejected as not credible Claimant's testimony to the extent she related her 2018 treatment, surgery, and disability to a 2018 work-related event or to cumulative trauma aggravating the 2013 injury. (FOF ¶ 12.) Given the overlap in context between Claimant's deposition and live testimony, the WCJ was not required to provide specific reasons for crediting or discrediting Claimant's testimony in this regard.

21

*Amandeo*, 37 A.3d at 77. Thus, the WCJ could rely upon the WCJ's own observations of Claimant's demeanor during her testimony before the WCJ in determining that Claimant's causation testimony was not credible.

Further, the reasoned decision requirement "does not require the WCJ to discuss all of the evidence presented." *Dorsey*, 893 A.2d at 194 n.4. Rather, "[t]he WCJ is only required to make the findings [that are] necessary to resolve the issues raised by the evidence and [that are] relevant to the decision." *Id.* Here, the WCJ determined that Claimant's testimony as to causation, as well as her medical evidence, failed to establish that her disability was related to a work injury that occurred on April 2, 2018. (FOF ¶¶ 12-13.) Additionally, aside from Claimant's testimony as to causation, which the WCJ rejected along with Claimant's medical evidence, the WCJ explained that there was no other opinion offered by Claimant to prove that her disability and her June 12, 2018 surgery were the result of any cumulative trauma/cumulative aggravation type of injury. (*Id.* ¶ 13.) The WCJ therefore relied on other credible evidence in the record, *i.e.*, Dr. Rubenstein's reports, in which he opined "that Claimant was harboring arthritis that became progressive and symptomatic," that her "pain in 2018 appears to be a natural progression of arthritis and possibly a progression of a pre[]existing meniscal tear[,]" "that the 2018 MRI . . . was consistent with the history of prior knee damage and . . . a history of arthritic changes that were clearly present prior to April of 2018," that "there was no evidence of a material exacerbation of the pre[]existing arthritic changes[,]" and "that any limitations referable to [Claimant's] degenerative joint disease would be related to her arthritic symptomatology and unrelated to anything that occurred in April of 2018." (*Id.* ¶ 14.) Our review of the record indicates that the WCJ's findings of fact adequately addressed all the testimony and evidence

22

presented in this case that were necessary and relevant to resolving the issues before the WCJ. Accordingly, to the extent that Claimant's testimony and other evidence conflicted with Dr. Rubenstein's opinion that Claimant's disability was related to preexisting degenerative changes, rather than a work-related event, the WCJ sufficiently explained why the latter was credited over the former. We are, therefore, satisfied that the WCJ issued a reasoned decision as required by Section 422(a) of the Act.

### III. Conclusion

For the foregoing reasons, the Board did not err in upholding the WCJ's determination that Claimant did not meet her burden of proof on the Claim Petition. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yocelene Bertresse,              :
              Petitioner     :
                                   :
           v.               :     No. 436 C.D. 2020
                                   :
Workers' Compensation Appeal Board,  :
(Vitas Healthcare Corp.),           :
              Respondent   :

# **O R D E R**

**NOW**, April 13, 2021, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge