**Molly D'ERRICO, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 14, 1999.

Decided July 26, 1999.

John J. McAuliffe, Philadelphia, for petitioner.

Nancy J. Pease and Stacy A. Tees, Philadelphia, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

SMITH, Judge.

Molly D'Errico (Petitioner) appeals from an order of the Workers' Compensation Appeal Board (Board) that reversed a decision of a Workers' Compensation Judge (WCJ) to award Petitioner benefits for a psychological injury suffered while work-

ing for the City of Philadelphia (Employer) and that denied counsel fees to Petitioner. The questions presented by Petitioner are whether the Board erred in finding that Petitioner did not prove that she was subjected to abnormal working conditions; whether the Board erred in finding that Petitioner was still required to present a prima facie case supporting an award of benefits after Employer filed a late answer without adequate excuse; and whether the Board erred in failing to award Petitioner counsel fees.

Petitioner filed a claim petition on May 11, 1990 alleging a work-related stress-disorder injury caused by unusual work rules and conditions. On June 6, 1990, Employer filed a late answer denying the allegations in the claim petition, but the WCJ found that Employer failed to establish an adequate excuse for the late filing. After hearing evidence including expert medical testimony from both parties, the WCJ found the testimony of Petitioner and her expert medical witness credible and persuasive, and made the following pertinent findings of fact:

[8.(a)] [Petitioner] first began working for the Philadelphia Traffic Court in September of 1969 as a clerk.

. . . .

(d) [Petitioner] began working as a personal aide to Judge Lillian Podgorski during or about the fall of 1987, and [Petitioner] did not experience any emotional or other trauma at her place of employment prior to 1988.

9. Consistent with credible and persuasive testimony of [Petitioner,] the [WCJ] finds that [Petitioner's] supervisor, Judge Lillian Podgorski engaged in the below *specific* acts and conduct directed towards [Petitioner] beginning in 1988 and continuing through 1990 that were so extreme, bizarre and abnormal upon the [WCJ's] factual review of each specific act individually and upon the [WCJ's] review of all specific acts collectively that [Petitioner] was exposed to supervisory conduct by Judge Podgorski

that fell way outside usual, customary or normal acts as are set forth below and which acts are found by the [WCJ] to have taken place by objective and substantial evidence of record in this case.

(a) [Petitioner] was instructed by Judge Podgorski to keep the outside office door locked with a peephole, and that if anyone knocked at the door [Petitioner] was required to determine through the peephole who was present and obtain permission from Judge Podgorski before allowing anyone to enter through the door.

(b) [Petitioner] was not allowed to have friends or co-workers come through the outside door leading to her work area and the Judge's chambers to visit, talk and otherwise socialize with [Petitioner].

(c) Judge Podgorski expressed to [Petitioner] suspicion of repairmen and other outside persons 'spying' and [Petitioner] was directed to watch closely those persons to determine that the persons were not planting any bugs or tapes in the office.

(d) Judge Podgorski told [Petitioner] that the [j]udge was afraid that the work phones were tapped and phone calls from friends of Judge Podgorski and Traffic Court business phone calls were directed to [Petitioner's] home residence.

(e) Judge Podgorski on occasions, when talking to [Petitioner] at work, would suddenly tell [Petitioner] 'don't talk' and would proceed to tell [Petitioner] that Judge Podgorski believed their [conversation] was being tapped.

(f) Judge Podgorski communicated to [Petitioner] that she did not like anyone at work and on occasions when [Petitioner] did not communicate agreement with the [j]udge, Judge Podgorski became very angry at [Petitioner.] This behavior became even more extreme when Judge Podgorski would say something pertaining to [Petitioner's] own family,

and when [Petitioner] disagreed with what was said, Judge Podgorski on occasions threw things at [Petitioner] and cursed at [Petitioner].

(g) As was the case with other Traffic Court Judges, Judge Podgorski had a cleaning woman assigned to clean her office. However, Judge Podgorski communicated to [Petitioner] her dislike of the cleaning woman calling her a 'witch' and stating to [Petitioner] that the cleaning woman was spying on them and [Petitioner] was directed by Judge Podgorski not to talk to the cleaning woman and to do all the cleaning in the office and the [j]udge's bathroom.

(h) [Petitioner] was directed by Judge Podgorski to have all paperwork on her desk turned downwards so that delivery persons and other persons would not be able to see anything.

(i) [Petitioner] was provided by Judge Podgorski with a list of auto license tags on several occasions and was directed by Judge Podgorski to run the tags to determine the names on them in that Judge Podgorski specifically communicated to [Petitioner] that Judge Podgorski felt that she was being followed.

(j) [On one occasion, Petitioner] intended to send a get well card to a former Traffic Court Employee named Lonnie but when Judge Podgorski overheard [Petitioner] talking to another person about this card, Judge Podgorski specifically directed that [Petitioner] not send Lonnie the get well card.

(k) Judge Podgorski spoke to [Petitioner] and identified specific individuals as being on [the judge's] enemies list and Judge Podgorski strictly prohibited [Petitioner] from speaking to [the] persons on the list or sending cards to those persons.

(l) [On another occasion,] Judge Podgorski directed to [Petitioner] and her husband a note about food products being blessed by a Rabbi and the costs of same being passed [on to] the consumer with the note further containing the spe-cific words 'Please burn this paper in an ashtray in your sink, then put the charred remains in your garbage disposal. Please be careful not to talk on the phone about this, you never know who's listening. When you tell people, please don't say where it came from.'

10. On January 26, 1990, [Petitioner] had a particularly bad day when Judge Podgorski was yelling at her and throwing objects around and was complaining that employees were deliberately blocking doors and ramps to block Judge Podgorski's movements and during this work day [Petitioner] told Judge Podgorski that she could not take it any longer and needed to sign out sick. After [Petitioner] made this statement, Judge Podgorski began hollering at [Petitioner] and accusing [Petitioner of not being loyal to the judge.]

11. Following the above work incident on January 26, 1990, [Petitioner] was out of work for approximately one week when she returned to work with a letter from [Dr. Eric Fine.]

12. Judge Podgorski's conduct toward [Petitioner] did not improve when [Petitioner] returned to work for her in February, 1990 and Judge Podgorski committed continuing extreme, bizarre and abnormal acts directed towards [Petitioner] including shredding Dr. Fine's initial return to work letter and slamming doors in [Petitioner's] face and making [Petitioner's] work life so unbearable that on March 8, 1990 [Petitioner] told Judge Podgorski that she could not work this way and that she could not continue working in a locked office.

WCJ's Opinion, Findings of Fact Nos. 8—12. Petitioner was transferred to the Traffic Court's mailroom on March 12, and she has not returned to work since March 19. The WCJ rejected the entirety of Judge Podgorski's testimony regarding the events, except to the limited extent that she did not act with willful malice.

The WCJ credited Dr. Fine's expert medical opinion that Petitioner suffers a major depression psychiatric disorder that is primarily causally related to the events at work, and he concluded that Petitioner had sustained her high burden of proving that abnormal working conditions caused her psychological injury. The WCJ, however, failed to award Petitioner counsel fees and noted that Petitioner had not requested such in her claim petition or on the record in any of the hearings. Both parties appealed to the Board, which reversed the WCJ in favor of Employer. The Board accepted the WCJ's factual findings, including the WCJ's determination that Employer filed a late answer without adequate excuse, but concluded as a matter of law that Petitioner had not established that her mental disorder was caused by abnormal working conditions in her environment at the Philadelphia Traffic Court.[1]

■ For purposes of discussion, the Court will first address Petitioner's contention that the Board erred in finding that she was required to establish a prima facie case for workers' compensation benefits despite Employer's late filing of its answer without adequate excuse. In a claim petition, the claimant bears the burden of proving all elements necessary to support an award of compensation. *Rite Aid Corp. v. Workers' Compensation Appeal Board (Bennett)*, 709 A.2d 447 (Pa. Cmwlth.1998). When an employer files a late answer without adequate excuse, the employer admits every factual allegation in the claimant's claim petition, and the employer is barred from presenting any affirmative defenses or challenges to any of the factual allegations therein. *Id.*

■ In this case, Petitioner seeks benefits for a psychological injury, and as such she was required to prove that her injury was not a subjective reaction to normal working conditions. *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board*, 546 Pa. 27, 682 A.2d 1257 (1996). The question of whether the facts of a particular case, as found by the factfinder, support the conclusion that the claimant was exposed to abnormal working conditions is one of law reviewable on appeal to the Court. *Id.* Accordingly, the question of whether Petitioner was exposed to abnormal working conditions cannot be deemed waived by Employer's admission of the factual allegations in Petitioner's claim petition, and the Board properly held Petitioner to her burden. *See Rite Aid Corp.*

■ Petitioner also contends that the Board erred in concluding that she did not prove that she was subjected to abnormal working conditions. Because psychological injuries are by nature subjective, a claimant seeking to recover workers' compensation benefits for a psychological injury cannot rely solely on his or her own account of the working environment, but instead must produce objective evidence which is corroborative of the claimant's subjective description of the working conditions said to have caused the psychiatric injury. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990). Furthermore, in order to establish that the workplace was the cause of the psychological injury, the claimant must establish that the injury arose from abnormal working conditions rather than the claimant's subjective reaction to normal working conditions. *Id.* Cases involving psychological injury are highly fact sensitive, and the work condi-

1. This Court's review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence on the record as a whole, whether an error of law was committed or whether constitutional rights were violated. *See, e.g., Schriver v. Workers' Compensation Appeal Board (Department of Transportation),* 699 A.2d 1341 (Pa.Cmwlth.1997). Credibility determinations are for the WCJ as sole factfinder and may not be disturbed by this Court where supported in the record by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992).

tions must be considered in the context of the specific employment. *Hershey Chocolate Co.* Accordingly, this Court must determine whether the conditions found to exist by the WCJ are sufficiently abnormal in the context of the specific work environment of judicial chambers in the Traffic Court to allow Petitioner to recover worker's compensation benefits.

The work conducted in judicial chambers requires a high degree of confidentiality that makes Judge Podgorski's practices of securing her door, regulating the visitors and protecting documents from casual view not only usual but indeed necessary in the context of the specific employment. The other incidents, which this Court is required to accept as having occurred by the nature of its appellate function, concern behavior by Judge Podgorski that may be uncivil and perhaps excessive. However, the Supreme Court has explained:

> In assessing whether work conditions are abnormal, we must recognize that the work environment is a microcosm of society. It is not a shelter from rude behavior, obscene language, incivility, or stress. While we do not suggest that insensitive behavior is socially acceptable in the work place, it is unrealistic to expect that such behavior will not occur.

*Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Board (Guaracino)*, 544 Pa. 203, 215, 675 A.2d 1213, 1219 (1996).

Moreover, judicial chambers, like any other small office, require a close working relationship among its staff, and workers routinely may be exposed to the vagaries of co-workers' or employer's sometimes eccentric personalities or uncivil behavior. Such exposure in general cannot be considered an abnormal working condition, but that is not to say that a claimant can never produce objective corroborative evidence to demonstrate that the work environment described above caused psychological injury due to its content, intensity and duration. Nevertheless, the Court is not convinced that the incidents in this case rise to the level of abnormal working conditions either individually or in the aggregate.[2] For the foregoing reasons the order of the Board is affirmed.

## ORDER

AND NOW this 26th day of July, 1999, the order of the Workers' Compensation Appeal Board is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I would conclude from the findings of the workers' compensation judge (WCJ) that Molly D'Errico's (Claimant) psychiatric injury is the result of abnormal working conditions. Thus, I would reverse the order of the Workers' Compensation Appeal Board (WCAB) and would award Claimant benefits.

Claimant worked as a personal aide to Judge Lillian Podgorski of the Philadelphia Traffic Court. The majority holds that the psychiatric injury suffered by Claimant while working in that position is the result of Claimant's subjective reaction to normal working conditions.[1] The ma-

---

**2.** The last issue posed by Petitioner is whether the Board erred in failing to award Petitioner counsel fees. Petitioner contends that because Employer filed a late answer, she is entitled to a sua sponte award of counsel fees. However, the Court need not address this issue as Employer has prevailed in this proceeding, and accordingly Petitioner is not entitled to fees. *Borda Construction v. Workmen's Compensation Appeal Board (Borda)*, 689 A.2d 1005 (Pa.Cmwlth.1997).

**1.** To establish compensability for psychiatric injuries which are unaccompanied by physical trauma, a claimant must prove that (1) she suffered a psychiatric injury (2) which was causally related to her employment (3) and was more than a mere subjective reaction to normal working conditions (4) for that kind of job. *Antus v. Workmen's Compensation Appeal Board (Sawhill Tubular Division, Cyclops Industries, Inc.)*, 155 Pa.Cmwlth. 576, 625

jority explains that "Judge Podgorski's practices of securing her door, regulating the visitors and protecting documents from casual view [are] not only usual but indeed necessary in the context of the specific employment." (Majority op. at 166.) The majority further explains that Judge Podgorski's other behavior "may be uncivil and perhaps excessive," but incivility does not constitute an abnormal working condition under *Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Board (Guaracino)*, 544 Pa. 203, 675 A.2d 1213 (1996). (Majority op. at 166.)

I agree with the majority that some of Judge Podgorski's work rules are reasonable.[2] However, I do not agree that Judge Podgorski's other behavior can be adequately characterized as merely "uncivil." A person who is "uncivil" is lacking in courtesy,[3] but Judge Podgorski did not just lack courtesy in her dealings with Claimant. In my opinion, Judge Podgorski's peculiarities and quirks went beyond incivility and rose to the level of abnormality.

Judge Podgorski threw things at Claimant. Judge Podgorski directed Claimant to do all the cleaning in the office and in the judge's bathroom when a cleaning woman was available to do it. Judge Podgorski suspected, for no apparent reason, that the cleaning woman, the repairmen and other outside persons were spies. Judge Podgorski kept an "enemy list" and strictly prohibited Claimant from speaking to persons on the list. Judge Podgorski would not allow Claimant to send cards to persons on her "enemy list" and specifically directed that Claimant not send a get well card to a former traffic court employee. Judge Podgorski presented Claimant with a list of auto license numbers and directed Claimant to "run the tags" because she believed, for no apparent reason, that she was being followed. Judge Podgorski had Claimant transfer the judge's personal and business phone calls to Claimant's home residence because the judge believed, for no apparent reason, that the work phones were tapped. Judge Podgorski sent a note to Claimant and her husband indicating that the cost of kosher food was being passed on to consumers. The note stated: "Please burn this paper in an ashtray in your sink, then put the charred remains in your garbage disposal. Please be careful not to talk on the phone about this, you never know who is listening. When you tell people, please don't say where it came from." (WCJ's Findings of Fact, No. 9(*l*).) Finally, Judge Podgorski shredded Claimant's return to work letter from her doctor.

Unlike the majority, I do not consider any of this to be normal behavior for a judge,[4] or for *any* employer. Indeed, because judges are viewed as possessing qualities demonstrating reasoned behavior and as worthy of the highest respect, I believe it is appropriate to hold them to a higher standard than other employers. By failing to live up to a standard that a worker would expect from *any* employer, much less approach the standard expected from someone in her position, I believe that Judge Podgorski created an abnormal working environment for Claimant.

As indicated above, the majority concludes otherwise based on *Philadelphia*

---

A.2d 760, 764 (1993), *aff'd*, 536 Pa. 267, 639 A.2d 20 (1994).

**2.** The rules imposed pertaining to socializing with co-workers during working hours, requiring the office door to be locked and being discrete about documents are certainly within the realm of acceptable and reasonable working conditions for judicial employees.

**3.** *See* Merriam Webster's Collegiate Dictionary 1285 (10 th ed.1997).

**4.** Given the reality that judges are bound to make decisions that will leave at least one litigant unhappy, I realize that it is necessary for judges to be concerned about security. However, Judge Podgorski's behavior is highly unusual even for an employer who has a heightened need for security. Certainly, any employee who has been subjected to such conduct on a regular basis over several years is likely to develop mental health problems.

*Newspapers.* However, the majority has omitted the final sentence of its quotation from that case, which states: "Where, as here, the evidence demonstrates that the offensive behavior complained of is an *isolated incident,* we must conclude·that an abnormal working condition has not been established." *Id.* at 215, 675 A.2d at 1219 (emphasis added). In other words, incivility does not constitute·an abnormal working condition where it is an isolated incident. Here, however, we are not dealing with an isolated incident. Therefore, based on *Philadelphia Newspapers,* Claimant has established that her psychiatric injury was the result of abnormal working conditions.

Accordingly, I would reverse.[5]

---

**5.** Because my holding differs from that of the majority, I would address whether Claimant was entitled to counsel fees for an unreasonable contest. Here, because Employer presented the testimony of Judge Podgorski to challenge the credibility of Claimant's testimony regarding her working conditions, I would conclude that Employer established a reasonable basis for its contest and that Claimant is not entitled to an award of attorney fees. . *Ball Incon Glass Packaging v. Workmen's Compensation Appeal Board (Lentz),* 682 A.2d 85 (Pa.Cmwlth.1996) (holding that an issue of credibility is a legitimate and reasonable subject of inquiry and challenge).