J-S21018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.E.L., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.D.L., FATHER | : : : : : : : | No. 479 MDA 2022 |

Appeal from the Decree Entered February 22, 2022,
in the Court of Common Pleas of York County,
Orphans' Court at No(s): 2021-0212a.

BEFORE:   DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED:  SEPTEMBER 9, 2022**

Appellant D.D.L. (Father) appeals the decree terminating his parental rights to his five-year-old daughter, M.E.L. (the Child) pursuant to the Adoption Act.  ***See*** 23 Pa.C.S.A. § 2511(a)(1) and (b).  C.J. (Mother) brought the termination petition, wherein she averred that T.V. (Boyfriend) intended to adopt the Child.  On appeal, Father argues that Mother's petition was not cognizable, because she failed to strictly comply with the Act's statutory requirements; Father argues further that Mother's failure to comply was not excused by either of the Act's statutory exceptions. ***See*** 23 Pa.C.S.A. §§ 2901, 2903.  In the alternative, Father argues that termination was improper under Section 2511(b).  After review, we conclude the orphans' court did not err

_____

[*] Retired Senior Judge assigned to the Superior Court.

when it found Mother established grounds under Section 2511(b); however, the orphans' court did not first determine whether Mother satisfied the "cause shown" exception under Section 2901. Therefore, we vacate the termination decree and remand.

The record discloses the following procedural and factual history: Child was born in 2016. It is unclear when Mother and Father ended their relationship, but Mother averred in her petition that they divorced in July 2018. Originally, Mother had shared custody with Father, who lived with the Paternal Grandparents. Mother alleged that the Parental Grandparents had been "doing a lot of that work that [Father] should've been doing," and they eventually kicked him out of their home. *See* N.T., 2/22/22, at 5. In March 2018, Mother began a romantic relationship with Boyfriend. Around September 2019, Father signed an agreement providing Mother with sole physical and legal custody of the Child. Since then, Father has not seen or communicated with the Child. Mother testified that she terminated the Father's child support obligation, because she "didn't see a point in someone paying for someone they don't see." *Id.* at 9.

In October 2021, Mother and Boyfriend petitioned to terminate Father's rights under 23 Pa.C.S.A. § 2511(a)(1) and (b) of the Adoption Act; they averred Boyfriend intended to adopt the Child.[1] The orphans' court held a

---

[1] According to the court, the Paternal Grandparents sought custody soon after the filing of the termination petition. Mother testified that the Paternal Grandparents see the Child once or twice per month.

hearing on February 22, 2022. Notably, Father failed to appear despite having been properly served.[2]

In Father's absence, Mother presented testimony and evidence that termination was warranted under Section 2511(a)(1) and (b). She testified that the Child had not seen Father since September 2019, and that the Child considers Boyfriend to be her father. The family consists of Child, Mother, Boyfriend, the Child's half-brother (the son of Mother and the Boyfriend), and the Boyfriend's other son from a previous relationship (who is the same age as the Child). *Id.* at 14. Boyfriend testified about his positive relationship with the Child. Finally, the court heard from the Child's counsel.[3] Counsel represented to the court that the Child refers to Boyfriend as "daddy." Counsel asked the Child whether she knew anyone by Father's first name. The Child said there is a boy in her school by that name. Counsel informed the court that the Child has a positive relationship with Paternal Grandparents, but that she wants to share the last name of her half-sibling and Boyfriend's other son. Counsel represented that the orphans' court should terminate Father's rights.

---

[2] The Paternal Grandparents' counsel, Attorney Clark, was present for the termination proceedings, having received permission from Mother's counsel and Child's counsel to observe. *See* N.T. at 16. The Grandparents were not parties to the termination proceeding, and Attorney Clark did not take part in the hearing.

[3] Presumably, counsel represented the Child pursuant to 23 Pa.C.S.A. § 2313(a), although no formal appointment appears in the record.

The orphans' court granted the termination petition under 23 Pa.C.S.A. § 2511(a)(1) and (b).[4]  Father timely-filed this appeal.  He presents the following issues for our review:

> 1. Whether the orphans' court erred as a matter of law and/or abused its discretion in finding that Mother established by clear and convincing evidence that Father's parental rights should be involuntarily terminated without Mother also terminating her parental rights where it was proposed that Mother's Boyfriend would also be adopting the Child?
>
> 2. Whether the orphans' court erred as a matter of law and/or abused its discretion in failing to give primary consideration to the developmental and emotional needs and welfare of the Child when involuntarily terminating Father's parental rights?

Father's Brief at 5.

The relevant scope and standard of review are as follows:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  *See In re Adoption of L.J.B.*, 18 A.3d 1098, 1107 (Pa. 2016) (Opinion Announcing the Judgment of the Court), citing *Adoption of B.D.S.*, 431 A.2d 203, 207 (Pa. 1981).  This standard of review […] requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are

---

[4] At that point, the court immediately proceeded to the adoption petition.  The court recognized that the formal adoption could not occur until the termination was finalized.  Still, the court conducted the adoption hearing, found that adoption was in the Child's best interests, but deferred signing the adoption decree until the termination issue was settled.  Typically, an adoption hearing is conducted after termination's the 30-day appeal period had expired.  Because no one has challenged the court's procedure, we make no comment on its propriety.

supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. *See In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. *See S.P.*, 47 A.3d at 826. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will." *Id.* Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *See id*. at 821. […] "We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *S.P.*, 47 A.3d at 821 (internal citation and quotation omitted).

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (some citations omitted).

The sole purpose of the involuntary termination of parental rights is to facilitate adoption. *In re B.E.*, 377 A.2d 153, 155 (Pa. 1977). Adoption is a statutory right; because a termination petition filed by one parent against the other must occur in the context of an anticipated adoption, the parent seeking termination *must strictly comply* with all pertinent provisions of the Adoption Act in order for the adoption to be valid. *In re Adoption of M.R.D.*, 145 A.3d 1117, 1120 (Pa. 2016) (citing *In re Adoption of R.B.F.*, 803 A.2d 1195, 1199 (Pa. 2002)) (emphasis added).

Section 2512 of the Adoption Act designates who may file an involuntary termination petition, as well as the required contents of such a petition. That section states, in relevant part:

*(a) Who may file.* — A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

> *(1) Either parent when termination is sought with respect to the other parent.*
>
> (2) An agency.
>
> [***]

**(b) Contents**. — The following apply:

> (1) The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights.
>
> *(2) [...] [T]he petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted.*
>
> (3) If the petitioner is a parent and section 2514 (relating to special provisions when the child conceived as a result of rape or incest) applies, or if the petitioner is an agency, the petitioner shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.

23 Pa.C.S.A. § 2512(a), (b) (emphasis added).

Typically, the Adoption Act requires both parents to relinquish their parental rights, either voluntarily or involuntarily. *See generally* 23 Pa.C.S.A. §§ 2501-2521, 2711. The purpose of the relinquishment requirement is to sever the legal ties between the child and the natural parents, thereby allowing the child to be adopted into a new family unit. *See M.R.D.*, 145 A.3d at 1128.

There are two exceptions that allow a parent to retain parental rights, while allowing the child to be adopted. The first is the spousal exception under

23 Pa.C.S.A. § 2903, which permits a parent to consent to the adoption by a spouse (*i.e.*, the stepparent) while keeping intact their own legal relationship with the child.[5] ***See M.R.D.***, 145 A.3d at 1120-21. Our courts have recognized a second exception under 23 Pa.C.S.A. § 2901, which gives the trial court discretion to grant an adoption in limited circumstances where the party cannot meet the statutory requirements but has demonstrated cause for the noncompliance.[6] ***Id.*** at 1121 (citing ***R.B.F.***, 803 A.2d at 1201-02) (holding that same-sex couples may pursue Section 2901, where prior to the legalization[7] of same-sex marriage, they could not satisfy the spousal exception under Section 2903). This second exception under Section 2901 is known as the "cause shown" exception.

If neither of these exceptions applies, then the proposed adoption – averred by the petitioner-parent under Section 2512(b) – is invalid. ***See also***

---

[5] The provision states, *verbatim*: "Whenever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding." 23 Pa.C.S.A. § 2903.

[6] The provision states, *verbatim*: "Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated, the investigation required by section 2535 (relating to investigation) has been completed, the report of the intermediary has been filed pursuant to section 2533 (relating to report of intermediary) and all other legal requirements have been met. If all legal requirements have been met, the court may enter a decree of adoption at any time." 23 Pa.C.S.A. § 2901.

[7] ***See Obergefell v. Hodges***, 135 S.C.t. 2584, 576 U.S. 644 (2015) (legalizing same-sex marriage).

***M.R.D.***, 145 A.3d at 1120. And if the proposed adoption is invalid, then the termination petition is not cognizable, and any subsequent termination order cannot stand. ***M.R.D.***, 145 A.3d at 1120, 1130; ***see also L.J.B.***, 18 A.3d at 1107 (Opinion Announcing the Judgment of the Court).

Here, because Mother is a parent, her termination petition had to include an averment that another individual intended to adopt the Child. ***See*** 23 Pa. C.S.A. § 2512(b). Additionally, because Mother sought to retain her parental rights while terminating Father's rights, she had to meet either the spousal exception under Section 2903 or the "cause shown" exception under Section 2901.

On appeal, Father argues that Mother did not meet either exception. First, he claims that Mother could not satisfy the spousal exception, because Mother and Boyfriend are unmarried. ***See In re Adoption of J.D.S.***, 763 A.2d 867, 871 (Pa. Super. 2000) (holding that the spousal provision "applies only to 'stepparent' situations and has no application to those whose relationship is not a legally recognized marriage."); ***see also R.B.F.***, 803 A.2d at 1199-1200.

Second, Father argues that Mother did not satisfy the "cause shown" exception under Section 2901. According to Father, Mother did not even address the "cause shown" exception at the termination hearing. For this reason, Father concludes the court erred when it granted Mother's petition. Moreover, Father maintains that, as a matter of law and public policy, we must hold that the "cause shown" exception never applies in this situation, where

one parent seeks to terminate the rights of another parent so as to facilitate an adoption by an unmarried significant other.

In a joint brief, Mother and the Child's counsel concede that Mother did not meet the spousal exception under Section 2903. While they argue Mother satisfied the "cause shown" exception under Section 2901, their primary argument is the Father waived his challenge for raising it for the first time on appeal. **See** Pa.R.A.P. 302(a). Implicitly recognizing that Father's constitutional rights are at stake, Mother and the Child's counsel maintain that parties may waive rights, "even due process rights and other rights of constitutional magnitude." **Berry v. Berry**, 197 A.3d 788, 795 (Pa. Super. 2018) (citing **Tecce v. Hally**, 106 A.3d 728, 732 (Pa. Super. 2014)). **See also, e.g., C.M.**, 255 A.3d at 358 ("A parent's rights to make decisions concerning the care, custody, and control of his or her children is among the oldest of fundamental rights.") (citations omitted).

Thus, before we reach the merits, we must address whether Father preserved his claim. Essentially, Father challenges whether Mother's evidence was sufficient to grant her relief under the Adoption Act.[8]

---

[8] We recognize that Father's challenge might be viewed as a standing claim. **See J.D.S.**, 763 A.2d at 869 (holding that the stepfather lacked standing to file the termination petition against the father under Section 2512, where the stepfather and mother were separated). If Father presented a standing question, we would have no choice but to deem it waived. **See In re Adoption of Z.S.H.G.**, 34 A.3d 1283, 1288-90 (Pa. Super. 2011) (observing that standing is no longer a jurisdictional prerequisite to a court conducting a termination proceeding and concluding that standing can be waived) (relying
*(Footnote Continued Next Page)*

Here, Mother had to establish the grounds for involuntary termination under 23 Pa.C.S.A. § 2511(a) and (b). **See In re C.M.K.**, 203 A.3d 258, 261-62 (Pa. Super. 2019) (holding that termination requires a bifurcated analysis, where the petitioner must first establish grounds under Section 2511(a) before proceeding to Section 2511(b)). She also had to establish that the petition was cognizable under either the spousal exception or the "cause shown" exception. **See** 23 Pa.C.S.A. §§ 2903, 2901; **M.R.D.**, 145 A.3d at 1123. Both analyses required proof by clear and convincing evidence. This was the *prima facie* case Mother had to establish.[9]

The issue of sufficiency – *i.e.*, whether a party established the *prima facie* case – may be raised for the first time on appeal. For example, Father relies on **V.W. v. Department of Public Welfare**, 51 A.3d 282 (Pa. Cmwlth. 2012), where our sister appellate Court ruled that a local children and youth services agency was required to present a *prima facie* case **despite the**

_____

on **In re Nomination Petition of deYoung**, 903 A.2d 1164 (Pa. 2006)). But the precise issue here is not whether Mother and Boyfriend had standing to file a termination and adoption petition, but whether they proved the necessary requirements to obtain relief under the law.

[9] By contrast, if the petitioner is a local children and youth services agency, the petitioner does not have to aver that an adoption is contemplated. **See** 23 Pa.C.S.A. § 2512(b)(3).

Likewise, if the petitioner is a parent whose child was conceived by rape or incest, the petitioner is similarly relieved from having to establish that an adoption is presently contemplated. **Id.**; **see also** 23 Pa.C.S.A. § 2514; **and see Interest of Z.E.**, 2019 WL 3779711, at *1-8. (Pa. Super. 2019) (non-precedential decision).

***parent's nonappearance*** at an expungement hearing.[10]  We also observe

***D'Errico v. W.C.A.B. (City of Philadelphia)***, 735 A.2d 161, 156-66 (Pa.

Cmwlth. 1999), where a claimant in a worker's compensation matter was still

required to establish a *prima facie* case, even though the employer was barred

from presenting any affirmative defenses or from challenging any of the

factual allegations contained in the claimant's petition. ***Id.***

A similar rule applies here.  Mother was still obligated to demonstrate

that she met the legal requirements under the Adoption Act to obtain a

termination decree, notwithstanding Father's failure to appear at the hearing.

Because Father timely-filed his appeal and included this issue in his Pa.R.A.P.

1925(b) statement, Father preserved the question of whether Mother was

entitled to relief.

Turning the merits of Father's claim, we must determine whether Mother

satisfied the "cause shown" exception.  In her joint Brief, Mother advances

several reasons why the proposed adoption by Boyfriend serves the underlying

purpose of the Adoption Act's relinquishment requirement, and that

relinquishment of her rights is unnecessary under the circumstances of this

case.  ***See*** Joint Brief at 12-15.

---

[10] The mother sought to expunge her record as a perpetrator of child abuse under the Child Protective Services Law. ***See*** 23 Pa.C.S.A. § 6341(a)(2). Under the circumstances of that case, the agency – not the mother – had the burden of proof at the expungement hearing.  The Commonwealth Court concluded that even though the mother failed to appear at the hearing, the agency still had the burden of proving the existence of substantial evidence supporting the indicated report of child abuse. ***V.W.***, 51 A.3d at 285-86 (Pa. Cmwlth. 2012).

Mother cites the fact that the Child does not know Father, and that the Child wishes to share the surname of Boyfriend and her half-sibling. She distinguishes that her "new family unit" from the "hybrid relationship" that *M.R.D.* forbade; there, a mother sought to retain her rights while allowing the maternal grandfather to adopt the children.[11] Here, Mother contends her purposed adoption by Boyfriend would protect the integrity and stability of their new family unit.

However, Mother advanced none of these reasons to the orphans' court. And the orphans' court never decided whether Mother satisfied the "cause shown" exception. Instead, the court believed Father's appeal was premature, and that he could not raise this issue before the entry of the adoption decree. *See* Trial Court Opinion, 3/21/22, at 4 (not paginated). This is incorrect. Father had to appeal the termination order. Before the orphans' court could terminate Father's rights, the court had to determine whether Mother's averred adoption, contained in her petition, was valid. Under the circumstances here, this means the court had to determine whether Mother met the "cause shown" exception. If the termination petition is not cognizable, then the resulting termination decree cannot stand. *See M.R.D.*, 145 A.3d at 1130.

---

[11] We note that in *C.M.*, the Supreme Court upheld a proposed adoption by the grandparents. But there, the "cause shown" exception was not implicated because Mother voluntarily relinquished her rights. *C.M.*, 255 A.3d at 360-61.

Section 2901 provides, in part: "Unless **the court** for cause shown **determines** otherwise, no decree of adoption shall be entered…" 23 Pa.C.S.A. § 2901 (emphasis added). As our Supreme Court explained in **R.B.F.**:

> Upon a showing of cause, the **trial court** is afforded **discretion** to determine whether the adoption petition should, nevertheless, be granted. […] Such decisions will always be confined by a finding of cause and a determination of the best interests of the child in each individual case. Moreover, like other trial court decisions, findings of cause will be reviewed on appeal for an abuse of discretion. […] When the requisite cause is demonstrated, Section 2901 affords the **trial court** discretion to decree the adoption without termination of the legal parent's rights pursuant to Section 2711[.]

**R.B.F.**, 803 A.2d at 1202 (footnotes omitted) (emphasis added).

The orphans' court must determine, in the first instance, whether Mother demonstrated cause under Section 2901 by clear and convincing evidence. If an appeal is taken, then the appellate courts review that decision for an abuse of discretion. Thus, to the extent the record offers some evidentiary basis for Mother's appellate argument, we still cannot proceed. Our appellate role is not to scour the record for facts and then substitute our judgment for that of the orphans' court. Rather, our responsibility is to review the record to see whether the evidence supports the orphans' court decision. Here, the orphans' court made no decision, and thus a remand is necessary.

Father asks us to determine that Mother can never meet the "cause shown" exception as a matter of law. Father relies on **M.R.D.** to reason that an adoption by an unmarried partner is a violation of public policy. There, a

mother sought the termination of the father's parental rights to allow the maternal grandfather to adopt her children and become the mother's co-parent. *M.R.D.* 145 A.3d at 1118. Because the mother sought to retain her parental rights, no adoption would be valid unless an exception to the Adoption Act applied. Obviously, the spousal exception did not apply, and so Mother had to demonstrate "cause shown" under Section 2901. *Id.*, at 1118.

Our Supreme Court ultimately concluded that the mother did not meet the "cause shown" exception. The Court reasoned that the proposed adoption by the maternal grandfather would not create, or protect the integrity and stability of, "a new family unit" – *i.e.*, a horizontal relationship involving parents who are equal to each other and equals with the respect to the child(ren). *Id.* at 1128-29. Additionally, the Court found that the proposed adoption would create a host of confusing hybrid relationships (the maternal grandfather would be both the father and the grandparent to the children). *Id*. The Court further recognized that the maternal grandfather planned to live separately from the mother and the children. *Id.* at 1128.

Finally, the High Court measured public policy considerations, and it stressed that the Adoption Act might be exploited. The Court cautioned that permitting the maternal grandfather's adoption would "open the door for misuse of adoption proceedings by spiteful parents as a means to involuntarily terminate the rights of unwanted parents, potentially allowing grandparents, cousins, pastors, coaches, and a litany of other individuals who have a close relationship with a child to stand in as prospective adoptive parents so that

termination may be achieved." ***Id.*** at 1129. As our Supreme Court noted, "[g]iven that the complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, we must ensure that we do not open the floodgates to such gamesmanship." ***Id.*** (citation omitted).

Instantly, Father argues that the case before us is the exact type of nuclear custody battle the Supreme Court foretold in ***M.R.D.*** *See* Father's Brief at 14; *see also **M.R.D.***, 145 A.3d at 1134 (Wecht, J., concurring) ("[T]o allow custody litigants to invoke [termination] petitions as a weapon would foster the creation of orphans and 'provide parents with a new, and in our view dangerous, tactic in heated custody disputes; indeed, one can imagine routine cross-petitions for termination as part of custody battles.'" ***L.J.B.***, 18 A.3d at 1110.); ***and see C.M.***, 255 A.3d at 362 ("We acknowledge the solemn reality that a decree terminating parental rights is widely regarded as the civil law equivalent to the death penalty, forever obliterating the fundamental legal relationships between parent and child.") (Citations omitted).

Although we share these concerns, we do not read ***M.R.D.*** to mean that petitioners like Mother and Boyfriend are barred from invoking the "cause shown" exception as a matter of law. To extend ***M.R.D.*** to these circumstances would require this Court to break new ground.

The Supreme Court never decided whether "a long-term committed partner necessarily could excuse the spousal requirement" in a termination matter. ***See M.R.D.***, 145 A.3d at 1131 (Baer, J., concurring). As then-Justice,

now Chief Baer noted in his concurring opinion in **M.R.D.**, the mother in that case did not propose an adoption by a "long-term committed partner." **Id.** Therefore, we are without precedent to rule on this issue as matter of law; setting policy decisions like this is not a function of the Superior Court. "It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand legal doctrines. Such is a province reserved to the Supreme Court." **Lewis v. Lewis**, 234 A.3d 706, 717 n.3 (Pa. Super. 2020) (citation omitted). As such, we leave the question of whether Mother can meet the "cause shown" exception, as a matter of law, for our Supreme Court.

Whether Mother met the "cause shown" exception, as a matter of fact, is for the orphans' court to determine in the first instance. We leave to the discretion of the orphans' court whether it can decide the "cause shown" issue from the evidence already of record, or whether another hearing is necessary to make that determination.

As we noted above, Mother's *prima facie* case not only included the threshold "cause shown" exception, but also the statutory grounds for termination under Section 2511(a) and (b). The orphans' court determined Mother proved by clear and convincing evidence that termination was warranted under Section 2511(a)(1) and (b). In his second appellate issue, Father does not challenge the court's determination under Section 2511(a)(1). Rather, Father argues the orphans' court erred when it failed to give primary

consideration to Child's needs and welfare under Section 2511(b). Given our disposition, we address this issue.

Section 2511(b) provides in relevant part:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. […].

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.,** 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id.** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id.** at 763.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, Father does **not** argue that termination would be detrimental to the Child because it would sever their parent-child relationship. Instead, he argues that termination is not in the Child's best interest, because the

effect of the termination would also sever whatever custody rights the Paternal Grandparents would have. *See* 23 Pa.C.S.A. § 5326 (providing that a grandparent's right to seek custody shall be terminated upon the adoption of the child, unless the child was adopted by another grandparent, great-grandparent, or stepparent).

This argument is without merit. While the Section 2511(b) analysis depends upon the circumstances of the particular case, the court was not required to evaluate the bond between the child and a *grand*parent; rather, the court must evaluate the parent-child bond. And when there is no evidence of such a bond, courts may infer that none exists. *See K.Z.S.*, 946 A.2d at 762-63. Here, the record indicates that there is no bond between Father and the Child.

Furthermore, record supports the orphans' court determination that Mother established grounds for termination under Section 2511(b). Among other reasons, we note that the Child refers to Boyfriend as her dad, and when asked whether she knew anyone by Father's first name, the Child thought of a classmate. The Child has a close relationship with her half-sibling and with Boyfriend's other son. Therefore, we conclude the orphans' court did not err or abuse its discretion when it determined that termination would best serve the Child's needs and welfare under Section 2511(b).[12]

_____

[12] We also note that a potential adoption by Boyfriend might not necessarily terminate the Paternal Grandparents' ability to seek custody under Section

*(Footnote Continued Next Page)*

In sum, Mother has not established all the elements of her *prima facie* case. Although Mother has established the grounds for the involuntary termination of Father's rights under Section 2511(a)(1) and (b), the orphans' court did not decide whether Mother demonstrated "cause shown" under Section 2901 to render her termination petition cognizable.

Decree vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Dubow joins the Memorandum.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/09/2022

---

5326 of the Child Custody Act, which does not define "stepparent." That question is not before us, and thus we do not address it. However, we note that nothing in the record suggests that Mother plans to end their relationship with the Child. In fact, Mother testified that it was never her intention to keep the Child from the Paternal Grandparents and to do so "would only hurt [the Child]." **See** N.T. at 9. Because Father did not appear at the termination hearing, we must accept Mother's uncontested testimony.